HAZELL MACHINE COMPANY, DEFENDANT-APPELLANT *v.*
SHAHAN, PLAINTIFF-APPELLEE

No. 42900 March 16, 1964 161 So. 2d 618

302

*Scales & Scales,* Jackson, for appellant.

*Watkins & Eager, Elizabeth Hulen,* Jackson, for appellee.

306

PATTERSON, J.

This is a suit for the balance due on an open account in the alleged amount of $2,231.48, arising out of an oral contract, as well as for damages resulting from the breach of this oral contract in the alleged amount of $22,000, these two remedies being consolidated in the same declaration. Subsequent to the filing of the suit plaintiff below filed in such cause an ancillary affidavit together with a bond for attachment. The writ of attachment issued but no property was found. An ancillary writ of attachment issued and there was attached a 1960 model tractor and truck. Thereafter a supplemental declaration in attachment was filed containing the same provisions as in the original declaration. The appellant filed his answer to this declaration in attachment as well as answering in full the entirety of the original, amended declaration. From an adverse judgment in the sum of $10,353.33, defendant below appeals here.

The appellant contends the trial court erred in the following particulars: (1) It failed to sustain appellant's motion to dismiss for lack of jurisdiction and insufficiency of the process had on the defendant. (2) It

failed to sustain appellant's motion to segregate the two separate and distinct causes of action, one being ex contractu and the other ex delicto. (3) It refused to exclude testimony offered by the plaintiff in regard to the oral contract allegedly entered into between appellee and appellant in violation of the statute of frauds, Sec. 264, Miss. Code 1942, Anno., and further refused defendant a peremptory instruction for the same reason. (4) It permitted testimony to be introduced in violation of the best evidence rule. (5) It gave plaintiff two certain unnumbered instructions contrary to the law of the case, and (6) it refused to set the verdict of the jury aside as being contrary to the law and the overwhelming weight of the evidence.

These assignments of error will be dealt with in their numerical order following the facts as reflected by the record.

The evidence reflects that appellant and appellee entered into an oral contract about June 1, 1961, after negotiating in regard thereto for a period of time from May 19. This oral agreement appointed appellant distributor or sales agent in a designated area to market rebuilt automobile motors, called "Apco" motors. The purpose of this distributorship, and the contract relating thereto, was the sale of Apco motors in this teritory for the mutual advantage of both parties. Various duties and obligations were placed upon both parties by the agreement. The primary provisions of such contract were: Appellee was to be the distributor or sales agent of Apco motors in an exclusive area of one hundred miles surrounding the City of Jackson. Initially both would work together in the promotion of Apco products. Appellee was to obtain the use of a building agreeable to appellant as the site of the business in Jackson. In addition thereto, he was to maintain at all times an inventory of 150 Apco motors of approximate value of $25,000. This inventory was to consist of all kinds

of motors, including not only fast selling motors such as Chevrolets and Fords but slow moving motors as well. The appellee was to have the aid of appellant in the arrangements for financing this inventory, and he was to have a line of credit with appellant in the sum of $5,000. The motors were to be delivered by appellant's truck on a regular schedule as ordered by appellee, payment to be made therefor upon delivery.

Special orders of motors needed between scheduled deliveries were to be made by regular freight to be paid by appellee, but for which he was to be refunded by appellant. The appellant was also to pay for shipments made by appellee to out of town customers if made by regular freight, or in the event appellee used his own trucks for such deliveries he was to be paid the sum of $3.00 per motor. These Apco motors were to be delivered to appellee only upon a guarantee by him to supply appellant with a damaged or used motor for each rebuilt motor delivered. Appellee was required to pay a "block deposit" to secure this guaranty. The deposit varied from $30 to $100 per motor depending upon the kind and type delivered. This deposit was to be repaid as the used or damaged motors were picked up by appellant. It was subject to being forfeited in proportion to appellee's failure to have used or damaged motors available at his place of business for delivery to appellant. A deposit was also required upon the skid or frame to which the motor was attached, appellant agreeing to repay this "skid deposit" at the time such frames or skids were picked up by its trucks.

The sale price of the rebuilt motors as supplied to appellee was fixed. He was required to sell wholesale jobbers at appellant's catalogue price, this being the same amount he paid therefor. The profit to appellee in selling to jobbers was by way of a flat fee of approximately $16.00 per engine to be paid by appellant. He could, however, sell to dealers, fleet owners and

individuals at another catalogue price which allowed a profit of about 33-1/3% per motor. Further profits by way of labor charges were permitted appellee under the contract in that he could maintain an installation department in his place of business in which he could remove old engines from customers' automobiles and replace then with rebuilt engines. Appellee was also permitted to adjust claims under the warranty on the motors of appellant. Under this he could either authorize repairs or make them himself, in the latter event he was to be paid by appellant.

No time was specified for the continuance of the contract and there was no mention made of the time in the preliminary discussions leading up to it. Apparently both parties considered the contract to be for an indefinite period. Both parties realized the business was a progressive one and that profits, if any, would be small at first, the hope of both being that the business would grow to the mutual benefit of manufacturer and distributor.

The parties began performance of the contract about June 1, 1961. An agent of the appellant aided appellee in securing temporary storage space, which was to be used until a permanent site could be located, in anticipation of the first shipment of rebuilt motors. This agent also accompanied appellee to the First National Bank of Jackson, Mississippi, where arrangements were made so the distributor could borrow money to purchase his initial inventory as well as to maintain the inventory required by the contract. This financial arrangement was that the bank would furnish ninety percent of the invoice cost of the motors as received, securing the same by a trust receipt covering the property. The appellee was to pay the remaining ten percent and sign a note and trust receipt for the balance, the appellant's part in such financial arrangement being its assurance to the bank that it would repurchase the motors, if re-

possession thereof became necessary, at ninety-five percent of the invoice price.

The initial invoice listed 34 rebuilt engines at a cost of $4595.00, "block deposit" of $1340.00, "skid deposit" of $46.00, or a grand total of $5981.00. This invoice was paid by the bank and in turn appellee gave the bank a check for ten percent of the grand total and signed a note and trust agreement for the balance.

Thereafter appellee and appellant's agent found a permanent place of business which was suitable and adequate. It was leased on June 15, 1961 for a three-year period at a price of $300 per month. Appropriate signs were placed on the building advertising the business. Appellant contributed to the expense of these signs. In addition thereto it furnished the appellee with literature, etc., to be used in the advertisement of Apco motors.

The appellee and his wife spent all their time in operating the business in an attempt to make it profitable. They drew no pay therefor, putting all income back into the business. The appellee visited jobbers and other prospective purchasers throughout the area promoting the sale of Apco motors. His wife served as secretary and bookkeeper.

The business continued on an amicable basis until early in November 1961. Appellee maintained his inventory and made sales where he could. The agent of appellant came by on occasion to check the inventory and to aid in the promotion of the business. At the special request of this agent, appellee purchased on August 17, 1961, an additional inventory of 76 motors on the agreement that they would be picked up from him within thirty days. This extra purchase required financing beyond the $25,000 credit allowed by the bank, but by special arrangement the bank agreed to increase its credit on a temporary basis. The motors were not picked up within the time limitation as agreed. In September a shipment of motors for the invoice price of

$1576.00 was received by appellee and his check in payment thereof was issued. When this invoice was taken to the bank it refused appellee further financing due to information it had in regard to appellant's business structure. Appellee stopped payment on this check and promptly notified appellant of this action and requested this amount to be placed on his open account so that he might retain the motors. Appellant acquiesced in the request of appellee but thereafter their business relationship became strained.

The business progressed slowly, as was anticipated by both parties. The total of 54 engines in the amount of $9693.00 was received and paid for in October. Other phases of the business, the installation of motors, the adjustment of warranties, the sale of motors and the promotion of sales, continued throughout the month. Further trouble between the parties began in November, resulting, it is contended by appellant, from the refusal of appellee to confine his activities to the primary sale of motors to jobbers rather than promoting sales to dealers and individuals, and also that appellee devoted most of his energies to his individual business rather than to Apco products, both in derogation of the contract.

Appellee contends the contract was terminated by the appellant's refusal to supply motors as ordered to the extent of some 80 units in November. He contends further that the failure to receive engines to sell also deprived him of carrying on his installation and warranty service, since this phase of the business was directly dependent upon the former.

Finally on December 11th appellee was formally notified that his orders had been cancelled. The business lasted, therefore, approximately six months. During this period of time the bank financed 290 engines for the appellee. The motors remaining on hand were tendered to the bank pursuant to the trust agreement by

the appellee as he was unable to finance them further.

The evidence discloses without serious dispute that a reasonable time for the development of a business of this nature, in order for the distributor to regain his time, labor and expenses incident to the initial development thereof and to make it profitable, would be one year and that reasonable notice of termination of a business contract of this sort would be six months.

██ ██ Appellant's first assignment of error is that the court below failed to sustain his motion to dismiss for lack of jurisdiction and insufficiency of process. This assignment of error is not well taken. Pursuant to the original declaration process was had upon the Secretary of State under the theory that defendant was doing business in this State. This is authorized by Sec. 1437, Miss. Code of 1942, Anno. A special hearing was had in the court below to determine the sufficiency of this process. The court there held the appellant was doing business within the State. ██ ██ No record having been made of the testimony, the presumption arises that the evidence supported the judgment. Rowell & Co. v. Sandifer, 129 Miss. 167, 91 So. 899; Berry v. Dampier, 131 Miss. 893, 95 So. 744.

██ ██ Appellant contends, however, that the factual situation here is controlled by Livestock Services, Inc. v. American Cyanamid Co., 244 Miss. 531, 142 So. 2d 210, wherein the Court held from the facts there before it that the defendant was not doing business within the State. From the language of the statute, it is apparent that whether one "is doing business within the State" must be determined from the facts of each case. This is recognized in *Livestock Services,* supra, wherein it is stated: "The appellee fully sustained the allegations of its motion and showed conclusively that it was not engaged in doing business within the State." See also Case v. Mills Novelty Co., 187 Miss. 673, 193 So. 625, and Wiley Electric Co. v. Electric Storage

Battery Co., 167 Miss. 842, 147 So. 773. In the latter case, the Court held among other things, the following:

"Out of the great mass of cases on the question of what constitutes doing business within the meaning of the statutes fixing the terms or conditions upon which foreign corporations may do business in the state, it clearly appears that the question is largely one of fact to be determined by the circumstances of each particular case. . ."

██ █ Though not compelled so to do in view of the judgment entered upon the special hearing, we hold the record of the trial of this case on the merits is replete with testimony to the effect that appellant was doing business within the State. Additionally, appellant entered its appearance in response to the process in attachment and answered the declaration in attachment as well as fully answering the amended original declaration. It was thus subject to the jurisdiction of the court and judgment being entered against it on both the declaration in attachment and the amended original declaration which sought damages on the open account as well as damages for breach of the oral contract. Branham v. Drew Grocery Co., 145 Miss. 627, 111 So. 155; Travelers Ins. Co. v. Inman, 157 Miss. 810, 126 So. 399. It is our opinion that the defendant was properly in court and subject to its jurisdiction for any one of the three above stated reasons.

Appellant next assigns as error the trial court's refusal to segregate the cause of action charging specifically that a cause of action arising ex delicto has been joined with one arising ex contractu, and that such misjoinder has resulted in harm to the appellant. He relies upon Town of Hazlehurst v. Cumberland Tel. & Tel. Co., 83 Miss. 303, 35 So. 951, wherein there was a definite misjoinder of action and as such the Court held that a demurrer to the declaration was properly sustained. The question raised reduces itself to the de-

termination of whether there was a misjoinder in the present declaration. This declaration seeks judgment for the amount due on an open account arising out of the contract. It also seeks judgment for damages resulting from the breach of the same contract. The appellee plainly based his cause of action on the contract and its breach. See 1 Am. Jur. 2d, Secs. 8 and 9, pages 549-551, as follows:

"Actions at law of a personal nature may be, in form, either ex contractu—that is, based upon contract —or ex delicto—based upon tort. Although there is a broad distinction between causes of action arising ex contractu and those arising ex delicto, and a mere matter of contract cannot be converted into a tort, the dividing line between breaches of contract and torts is often dim and uncertain. There is no definition of either class of defaults which is universally accurate or acceptable. In a general way, a tort is distinguished from a breach of contract in that the latter arises under an agreement of the parties, whereas the tort, ordinarily, is a violation of a duty fixed by law, independent of contract or the will of the parties, although it may sometimes have relation to obligations growing out of, or coincident with, a contract, and frequently the same facts will sustain either class of action.

"The determination of whether an action is on contract or in tort requires knowledge of the source or origin of the duty, . . . . An action ex contractu only, and not an action sounding in tort, can be maintained for a mere failure to perform a contract. . . . . if the cause of complaint is an act of omission or nonfeasance which, without proof of a contract to do what has been left undone, will not give rise to any cause of action, then the action is founded upon contract, and not upon tort. . . . ."

 See also 1 C.J.S., Actions, Sec. 32, to the same effect, and Savage v. Prudential Life, 154 Miss. 89, 121

So. 487. There was no duty owed to appellee by appellant fixed by law and independent of the contract. In fact, the duties due the appellee by the appellant, and vice versa, arose directly from the contract. Hence, there is no merit in appellant's contention of a misjoinder of actions.

The primary assignment of error by appellant is that the basis of this suit, an oral contract, is violative of the statute of frauds, Sec. 264, subsection (d), Miss. Code 1942, Anno., and as such is unenforceable, and that he was entitled to a peremptory instruction as a result thereof. The applicable provisions of this Section are:

"An action shall not be brought whereby to charge a defendant or other party:

"(d) Upon any agreement which is not to be performed within the space of fifteen months from the making thereof; or . . . . Unless, in each of said cases, the promise or agreement upon which such action may be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some person by him or her thereunto lawfully authorized in writing."

█ █ The record reflects that no time limitation was discussed before the contract, neither was any limitation fixed therein. This being true, the contract was for an indefinite time and as such could be terminated by either party at will by giving reasonable notice. All of the testimony reflects that six months' notice of termination would, under the type of business here engaged in, be reasonable. The recent case of United States Finance Co. v. Barber, etc., 157 So. 2d 394, and the cases therein cited, is decisive of this point. It holds:

"In brief, a contract for an indefinite period, such as one for employment or other performance that is to begin within fifteen months, which by its nature is not deemed to be perpetual, may be terminated at any

time on giving reasonable notice. 2 Corbin, on Contracts (1950), Sec. 446; 17A C.J.S., Contracts, Sec. 398. The contract between Shell Homes and Barber was for an indefinite period, and was terminable at any time by either party, upon giving reasonable notice.

"Contracts of present employment and of indefinite duration generally are held not to be within the meaning of this statute requiring contracts not to be performed within fifteen months to be in writing since such contracts are terminable at any time by the parties, and are therefore susceptible of performance within a year from the time of their inception. The possibility of performance within the fifteen months takes the contract out of the operation of the statute. 2 Corbin, on Contracts (1950), Sec. 446; 3 Williston Contracts (3rd ed. 1960, Jaegar), Sec. 495. This rule is particularly applicable to contracts of employment. 49 Am. Jur., Statute of Frauds, Sec. 51. Contracts for personal services for an indefinite time are deemed possible of performance within fifteen months from their formation, since, for example, the employee may die within that period. Ibid., Secs. 58, 30. The phrase 'not to be performed' contains negative words, and, accordingly, to bring a particular contract within the statute, there must be a negation of the right to perform it within fifteen months. 37 C.J.S., Frauds, Statute of, Sec. 42. Hence the Barber contract was not within the statute of frauds. Ibid., Secs. 50, 62; Duff v. Snider, 54 Miss. 245 (1876); Boggan v. Scruggs, 200 Miss. 747, 29 So. 2d 86 (1947); cf. Gerachi v. Sherwin-Williams Co., 156 Miss. 36, 125 So. 410 (1930), distinguished in 2 Corbin on Contracts, Sec. 446; Edwards & Sons v. Farve, 110 Miss. 864, 71 So. 12 (1916), distinguished in 3 Williston, Sec. 495." See also E. E. Morgan & R. W. Hyde v. Jackson Ready-Mix Concrete, 157 So. 772.

There was a possibility, therefore, of the performance of the contract within fifteen months. The case

relied upon by appellant, Gerachi v. Sherwin-Williams Co., 156 Miss. 36, 125 So. 410, as pointed out in *Barber*, was distinguished in 2 Corbin on Contracts, par. 446. In *Gerachi* the parties considered the contract to be permanent. ''It further appears from the defendant's testimony that the contract made in 1926, taking their own version of it, was not to be limited for fifteen months or was not to be performed within any definite specified time, but was to endure forever, subject to the payment of indebtedness incurred thereunder. As the contract relied upon was verbal and was not to be performed within the statutory period, an action could not be maintained to enforce the agreement. . . .''

■■ The most that can be said of the contract here was that it was indefinite as distinguished from permanent or ''was to endure forever'' as in *Gerachi*. The contract being indefinite as to time and capable of being performed within fifteen months was not within the statute of frauds. This conclusion is not altered by the rental of a place of business for a period of three years, since the testimony indicates this time element was not the result of the contract but rather was the result of the landlord's refusal to lease for a lesser period of time. The mere hope of a business continuing for an indefinite time does not in itself extend a contract or render it incapable of performance within fifteen months' limitation.

■■ The next assignment of error urged by appellant is that the lower court permitted testimony to be introduced in violation of the best evidence rule is not well taken for the reason it was not raised in the court below, and, secondly, the record indicates the testimony of the appellee was from his own personal knowledge. The books and records of the appellee were produced in court prior to the cross-examination of appellee, and no attempt was made to cross-examine or impeach the testimony of appellee by reference to these

records. At the conclusion of all the testimony appellant's motion to exclude was made only on the ground of the agreement being void under the statute of frauds, no reference being made to the best evidence rule. Under these circumstances, we conclude that this assignment of error is not well taken. See Finley v. Armstrong, 117 Miss. 289, 78 So. 177; Trewolla v. Garrett, 200 Miss. 563, 27 So. 2d 887; Citizens Bank v. Miller, 194 Miss. 557, 11 So. 2d 457; Frisby v. Grayson, 216 Miss. 753, 63 So. 2d 96; Smith v. Stanley, 159 Miss. 720, 132 So. 452; Kroger Grocery Co. v. Harpole, 175 Miss. 227, 166 So. 335.

Appellant next asserts error in the giving of two unnumbered instructions in the court below which were not designated by the appellant to be made a part of the record here, however, they do appear in appellant's motion for a new trial wherein they are copied in full.

"Instructions ordinarily form no part of the record but they may be made so by bill of exceptions or other appropriate means; and it is well settled that objections to instructions, given or refused, will not be considered on appeal where such instructions do not appear of record. . . . Instructions are not made a part of the record by being copied into the motion for a new trial, by being spread on the minutes of the court and copied into the record or transcript. . . . ." 4A C.J.S., Appeal & Error, p. 620.

By indulging the assumption that these two instructions were properly before the court, they cannot here be considered as being erroneous by reason of the general rule stated in 5 C.J.S., Sec. 1560, et seq: "Where the instructions given by the court are not properly presented to the appellate court, it must be presumed that proper and full instructions were given. . . . Where all the instructions are not presented to the appellate court, it must be presumed that on all points other than

those covered by the instructions before the appellate court the jury were correctly instructed, . . . . Where error appears in certain instructions but the record does not properly present all of the instructions, it may be presumed that the error was cured by other instructions, . . . . . '' See also City of Canton v. Hart, 141 Miss. 655, 107 So. 195, and Miss. State Highway Com. v. Hillman, 195 So. 679.

▓▓ ▓ We hold, therefore, that the two unnumbered instructions complained of were not properly before this Court for consideration, having not been made part of the record, and that even if considered by themselves the presumption would arise that any errors therein would be cured by other instructions submitted by the court in accordance with applicable law.

▓▓ ▓ Appellant contends in his final assignment of error that the verdict of the jury was contrary to the law and against the overwhelming weight of the evidence. We have carefully considered the record and are of the opinion there was sufficient evidence to sustain the verdict of the jury. The case is therefore affirmed.

Affirmed.

*Lee, C. J., and Ethridge, McElroy and Rodgers, JJ.,* concur.