**IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI**

**NO. 2014-CA-00053-COA**

CHRIS CLAUSELL                                                APPELLANT

v.

JEFFREY BOURQUE                                              APPELLEE

DATE OF JUDGMENT:            12/23/2013
TRIAL JUDGE:                HON. DALE HARKEY
COURT FROM WHICH APPEALED:  JACKSON COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:    EDWARD D. MARKLE
                            STEPHEN B. SIMPSON
ATTORNEYS FOR APPELLEE:     GAIL D. NICHOLSON
                            CHESTER D. NICHOLSON
NATURE OF THE CASE:         CIVIL - TORTS - OTHER THAN PERSONAL
                            INJURY AND PROPERTY DAMAGE
TRIAL COURT DISPOSITION:    SUMMARY JUDGMENT GRANTED TO
                            APPELLEE
DISPOSITION:                AFFIRMED: 03/03/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., ROBERTS AND FAIR, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.     One of Chris Clausell's new shower doors fell out of its track and injured his foot. Jeffrey Bourque had nothing to do with that. He was hired by the seller of the doors to inspect the installation and determine why the door had fallen off and whether the doors were repairable. Bourque decided the doors would have to be replaced. He told Clausell he would be back the next day to do it, but he never returned. The seller promised Clausell that it would hire someone to replace the doors, but for whatever reason that never happened.

¶2.     Clausell put the door back up himself and continued to use it, even though the door regularly fell out of its track. Months later, Clausell was injured again, this time more seriously. Clausell sued Bourque, ultimately alleging that Bourque negligently failed to repair the doors, replace them, or warn Clausell of the danger. The trial court granted Bourque summary judgment, and Clausell appeals. We affirm.

## FACTS

¶3.     The Clausells purchased new shower doors at Lowe's, a retailer that sells various "home improvement" items. While Lowe's sells shower doors, it does not install them; instead, it arranges for a third-party contractor to perform the installation. In this instance, Clausell indicated that he wished to purchase doors for his shower. For a fee, Lowe's arranged for a third-party installer of its choosing (Joel Maguzzu) to perform a "detail" – an inspection of the Clausell home to measure for the new doors. Clausell then used Maguzzu's specifications to purchase the appropriate door for his application from Lowe's. Clausell also paid Lowe's, separately, to arrange for the installation of the doors, again to be done by a third-party installer. Maguzzu installed the doors on November 19, 2008. The inside door began coming out of the track some time later. Within about two months, the door had fallen out of the track ten or fifteen times. Clausell contends that he brought this to the attention of Lowe's, but it did not act to remedy the situation until the door fell on Clausell's foot and caused him a severe bruise.

¶4.     After Clausell complained about his injured foot, Lowe's hired Bourque to inspect the door installation. He did so on January 28, 2009. Whether Bourque was also tasked with

2

repairing the doors is in dispute. It was undisputed, however, that Bourque told Clausell he would be back the next day to replace the doors. In his report to Lowe's, which was contemporaneously provided to the Clausells, Bourque indicated that the doors were damaged and would have to be replaced. He attributed the damage to uneven contact with the wall, which was severely out of plumb. Bourque stated (with reservations) that he believed new doors would work if shims were added so the top and bottom of the door struck the wall at the same time. Bourque charged Lowe's $35 for the inspection.

¶5.     Contrary to Bourque's expectation, Lowe's did not hire him to replace the doors. Bourque considered his involvement in the matter finished at that point. After Bourque did not return the following day, Clausell contacted Lowe's, which represented to him that it would arrange for someone to replace the doors. For whatever reason, the doors were never replaced – Clausell describes Lowe's as giving him the runaround. The Clausells put the doors back up themselves and continued to use them, even though the inner door would regularly fall out of the track and into the tub. On November 28, 2009, Clausell was seriously injured when he slipped and fell trying to evade the falling door.

¶6.     Clausell brought suit against Lowe's, Maguzzu (the installer), and Bourque. The trial court initially granted summary judgment to Bourque alone. Clausell appealed from that order, but this Court found the appeal to be interlocutory since there were claims remaining against the other defendants. *See Clausell v. Bourque*, 122 So. 3d 825, 827 (¶¶6-7) (Miss. Ct. App. 2013). After remand, the trial court entered a new judgment noting that the claims against the other defendants had been resolved. Clausell has again appealed.

3

## STANDARD OF REVIEW

¶7.     "We employ a de novo standard of review of a trial court's grant or denial of summary judgment and examine all the evidentiary matters before it . . . ." *Davis v. Hoss*, 869 So. 2d 397, 401 (¶10) (Miss. 2004).  Summary judgment is proper when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  M.R.C.P. 56(c).

¶8.     "The evidence is viewed in the light most favorable to the party opposing the motion." *Davis*, 869 So. 2d at 401 (¶10).  "[A]n adverse party may not rest upon the mere allegations or denials of his pleadings, but his response . . . must set forth specific facts showing that there is a genuine issue for trial."  M.R.C.P. 56(e).  Furthermore:

> [W]hen a party, opposing summary judgment on a claim or defense as to which that party will bear the burden of proof at trial, fails to make a showing sufficient to establish an essential element of the claim or defense, then all other facts are immaterial, and the moving party is entitled to judgment as a matter of law.

*Galloway v. Travelers Ins. Co.*, 515 So. 2d 678, 684 (Miss. 1987).

## DISCUSSION

¶9.     Clausell's amended complaint made the same four claims against all three defendants – that Lowe's, the original installer, and Bourque were negligent in:

(1) Providing and selling defectively designed and manufactured shower doors;

(2) Improper installation of shower doors;

4

(3) Misrepresentation and negligent recommendations concerning the type of shower doors to be installed in the Clausell home; and

(4) Failing to warn [Clausell] that the doors were not adequate or sufficient for the type of installation and use recommended by Lowe's.

Bourque's motion for summary judgment contended that Clausell had failed to produce any evidence Bourque committed any of these negligent acts. But over the course of the various motions, memoranda, counter-motions, and hearings (transcriptions of which do not appear in the record), the focus has changed to different claims. Clausell now (apparently) claims that Bourque negligently failed to repair or replace the doors and that he negligently failed to warn Clausell that they were dangerous.

¶10. The issue then becomes whether these causes of action are properly before the Court. In *State Farm Mutual Automobile Insurance Co. v. Ford Motor Co.*, 736 So. 2d 384, 386 n.1 (Miss. Ct. App. 1999), this Court held that when a defendant presupposes that a cause of action has been pled by making a motion for summary judgment against it (when it has, in fact, not been pled), that cause of action is before the Court through trial by consent. *See* M.R.C.P. 15(b). While Bourque did not assume these claims had been pled in his initial motion for summary judgment, they have been taken as a given by the parties through most of this litigation. We find that Bourque's acquiescence is so complete that these claims have been "tried" by consent.[1]

---

[1] We are aware of our prior holdings that a plaintiff's right to due process requires that summary judgment can only be granted on grounds asserted in a motion for summary judgment or (with proper notice and an opportunity to respond) after being raised sua sponte by the trial court. *See, e.g., Byrd v. Woods*, 90 So. 3d 666, 671 (¶23) (Miss. Ct. App. 2012).

### 1. Negligence in Failing to Warn

¶11.   Clausell contends that Bourque negligently breached a duty to warn him of the danger posed by the doors.  Even assuming that the claim is otherwise sound, it fails because there is no question Clausell knew of the dangerous condition of the doors both before and after they were inspected by Bourque.  "It is a general rule of law that the duty to give warning disappears entirely when it is shown that the injured person did, in fact, observe and fully appreciate the peril." *Ill. Cent. R.R. v. Crawford*, 244 Miss. 300, 315, 143 So. 2d 427, 431 (1962) (citation omitted).

### 2. Negligence in Failing to Repair the Doors

¶12.   Clausell next alleges that Bourque negligently failed to repair the doors.  This claim is also a nonstarter.  While Clausell does point to Bourque's admission in his deposition that he understood Lowe's had hired him to "fix" the doors, in context Bourque appears to be speaking about the ultimate goal rather than his specific instructions for that visit (Bourque admitted he expected to be hired to finish the job).  The work order from Lowe's states that Bourque was hired to "take a look [and] try to find out how [the door] fell [and] how bad . . . it broke."  The assignment was described as a "detail," a term denoting inspections and estimates, for which Bourque was paid $35 by Lowe's.

---

However, despite the incomplete record, there appears to be no doubt that Clausell had notice and an opportunity to respond to the bases asserted for summary judgment on the newfound causes of action.  We also are not convinced that due process is implicated because, had the new claims not been raised as they were, summary judgment would have been granted and the new claims would be barred by res judicata. *See Hill v. Caroll County*, 17 So. 3d 1081, 1085 (¶10) (Miss. 2009).

¶13.    Clausell contends that Bourque had a contractual obligation to repair the doors based on his reading of Bourque's contract with Lowe's. Clausell argues that because the contract requires various "installation services" performed by Bourque to be warranted and performed in a workmanlike manner, by accepting the inspection job, Bourque warranted *all* installation services arranged by Lowe's for the Clausells, and not just the inspection Bourque actually performed. Clausell's argument is plainly without merit.

¶14.    Even assuming Bourque had been hired to "fix" the doors, a negligence claim fails because there was no showing that Bourque – or anyone – could have repaired them. Instead, it is uncontested that the doors had to be replaced because they had been damaged beyond practical repair.[2] "The law does not require doing an impossible thing . . . ." *Teche Lines Inc. v. Danforth*, 195 Miss. 226, 250, 12 So. 2d 784, 786 (1943) (citation omitted).

### 3.  Negligent Alteration of the Doors

¶15.    Clausell also contends that Bourque negligently altered the doors by removing a part from the bottom of one of the doors. Clausell testified that the part had come off or become loose, and that the doors became worse after that happened. He said he pointed this out to Bourque during his visit, and Bourque tried but was unable to secure the part, possibly

---

[2] Bourque stated that the doors had to be replaced because screw holes on the bottom of the inner door were stripped. In his brief on appeal, Clausell contends that Bourque said the doors could be repaired if shims were installed, but Bourque actually stated that the shims were intended to prevent the new doors from coming out of their tracks and suffering the same damage as the original ones. He never described shims as a substitute for replacing the doors.

7

because the screws were stripped.[3] Bourque then removed the part entirely because, Bourque told Clausell, it could not serve its purpose if it was not firmly attached. Bourque allegedly took the part with him when he left, never to return.

¶16. In a negligence action, "the plaintiff bears the burden of producing evidence sufficient to establish the existence of the conventional tort elements of duty, breach of duty, proximate causation, and injury." *Palmer v. Biloxi Reg'l Med. Ctr.*, 564 So. 2d 1346, 1355 (Miss. 1990). Clausell does not make a serious attempt to flesh out a negligence claim on this point. He does not specifically identify the part, nor does he show that it could have been reattached in the first place. He also makes no effort to show that the removal of the part was a proximate cause of his injury. This claim fails as a result.

### 4. Negligence in Failing to Replace the Doors

¶17. Clausell seems to argue that Bourque, a carpenter, had a duty to recognize that the doors were dangerous and to replace them, with or without compensation, because of the danger they presented – sort of like how an emergency room is obligated to treat patients in dire need. The argument is undeveloped and unsupported by any authority. Instead, the general rule is that "[an] actor's realization that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action." *Long v. Patterson*, 198 Miss. 554, 561, 22 So. 2d 490, 492 (1945) (quoting Restatement (First) of

---

[3] This may have been the part attached by the stripped screw holes that Bourque identified in his report to Lowe's, though Bourque was adamant that he did not take it with him, and Maguzzu testified that the part Bourque mentioned was hanging off the door when he replaced the doors approximately ten months after Bourque's visit.

Torts § 314 (1934)).

¶18. As to the promise to return and replace the doors, again the statement appears to be taken out of context. Bourque seems to have been stating his expectation, based on his prior experience, that Lowe's would accept his proposal to replace the doors and would hire him to do it because he had done the inspection. There appears to be no doubt that Clausell understood this, since he knew Bourque was an independent contractor, and Bourque had provided the Clausells with a copy of his invoice to Lowe's, which identified the work performed as a "detail" for which Bourque was paid only $35.[4] When Bourque did not appear to replace the doors the following day, Clausell went to Lowe's to pursue the matter further. It appears to have never occurred to Clausell (prior to this litigation, that is) that Bourque had made a binding promise to personally take on the responsibility for replacing the doors.

¶19. Even if we assume Bourque made an unconditional promise to replace the doors, he was not contractually obligated to do so, for reasons we have already explained. The promise was gratuitous since it was made without consideration from Lowe's or the Clausells. To hold Bourque to the gratuitous promise through promissory estoppel, Clausell would have had to change his position in reliance on the promise, to his detriment. *Doe v. Hunter Oaks Apartments LLC*, 105 So. 3d 422, 427-28 (¶¶20-23) (Miss. Ct. App. 2013).

¶20. Clausell seems to argue that he deferred on replacing the doors because of Bourque's

---

[4] The Clausells had paid Lowe's $35 for a "detail" of their home before the doors were installed and would have been familiar with the term.

9

promise to replace them, but this is belied by his own testimony and actions. Bourque's promise was broken the very next day, when Bourque failed to appear as he said he would. At that point, Clausell resumed negotiations with Lowe's without ever contacting Bourque. There is no evidence Clausell had changed his position at the relevant time – when he was injured, nearly ten months later. We hold, as a matter of law, that Clausell could not reasonably defer that long on replacing the doors even if he really expected Bourque to return someday and do it for him.

¶21.    Even if the promise was not gratuitous, Clausell's claim would still fail because he alleges a simple breach of contract rather than a negligence tort. Our focus is on the element of duty, which provides an important basis to distinguish between contract and tort law. Whether the defendant owed the plaintiff a duty of care requires the consideration of public policy matters and is a question of law for the court. *Eli Investments LLC v. Silver Slipper Casino Venture LLC*, 118 So. 3d 151, 154 (¶11) (Miss. 2013).

¶22.    A "duty" can be assumed by contract or a gratuitous promise accompanied by detrimental reliance, but – although the distinction is not always maintained assiduously in our caselaw – not all contractual duties are duties of care. *See* 65A C.J.S. *Negligence* § 774 (2010) ("An allegation only of a breach of a contractual duty is not sufficient although it describes such breach as negligence."). In the context of an ordinary negligence action the duty of care is the requirement "to conform to a specific standard for the protection of others against the unreasonable risk of injury . . . ." *Laurel Yamaha Inc. v. Freeman*, 956 So. 2d 897, 904 (¶24) (Miss. 2007) (citation omitted).

10

¶23.    Put another way, the breach of a contract (whether described as "negligent" or not) is not actionable in tort under an ordinary negligence theory unless breaching the contract also breached a duty of care recognized by tort law.  There must be a duty of care "fixed by law and independent of the contract."  *Hazell Mach. Co. v. Shahan*, 249 Miss. 301, 317, 161 So. 2d 618, 624 (1964).  But, as the supreme court noted in *Hazell*, a duty of care "may sometimes have relation to obligations growing out of, or coincident with, a contract, and frequently the same facts will sustain either class of action."  *Id.*  The usual case is that the obligor must use reasonable care in his performance of the contractual duty.  "Accompanying every contract is a common law duty to perform with care, skill and reasonable experience, and a negligent failure to observe any of these conditions is a tort as well as a breach of contract."  *Gilmore v. Garrett*, 582 So. 2d 387, 391 (Miss. 1991) (quoting *Davis v. Anderson*, 501 S.W.2d 459, 462 (Tex. Civ. App. 1973)).

¶24.    Clausell does not allege Bourque negligently replaced the doors causing him to be injured; he alleges that Bourque failed to undertake the replacement in the first place.  The supreme court in *Hazell* noted that the law of the day precluded tort recovery in such cases of total nonperformance.  Quoting American Jurisprudence (Second), it explained:

> The determination of whether an action is on contract or in tort requires knowledge of the source or origin of the duty . . . .  An action ex contractu only, and not an action sounding in tort, can be maintained for a mere failure to perform a contract. . . . [If the cause of complaint is an act of omission or nonfeasance which, without proof of a contract to do what has been left undone, will not give rise to any cause of action, then the action is founded upon contract, and not upon tort.

*Hazell*, 249 Miss. at 317, 161 So. 2d at 624 (quoting 1 Am. Jur. 2d *Actions* §§ 8-9 (1962)).

11

The rule announced in *Hazel* may have exceptions, however. The Restatement (Second) of Torts took no formal position on the issue of whether a broken promise alone (i.e., nonfeasance) was a sufficient undertaking to expose the defendant to tort liability, though it noted with obvious sympathy that many jurisdictions had relaxed the rule against tort liability in cases where there was detrimental reliance on the promise to act. *See* Restatement (2d) of Torts §§ 323 cmt.d; 324A cmt.f (1964) ("[T]here is no essential reason why the breach of a promise, relied upon by the promisee or by a third person, with resulting physical harm to the latter, should not result in liability in tort."). But Clausell cannot show that his injuries resulted from reasonable reliance on Bourque's promise. Instead, Clausell apparently argues that a contractor's duty of care is never to breach the contract, and that by breaching the contract he would be responsible in tort for the consequences of the thing he was supposed to do remaining undone, forever. This would lead to absurd results.

¶25. In summary, we conclude that Bourque was not obligated to replace the doors, whether by contract or promissory estoppel. And even if Bourque had a contractual obligation to replace the doors, Clausell has failed to show that breaching that contract was a breach of a duty of care that would expose Bourque to tort liability under a negligence theory.

¶26. **THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ROBERTS, CARLTON, MAXWELL AND JAMES, JJ., CONCUR. BARNES AND ISHEE, JJ., NOT PARTICIPATING.**