# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01393-COA

**MISSISSIPPI STATE PORT AUTHORITY AT GULFPORT**  APPELLANT

**v.**

**SOUTHERN INDUSTRIAL CONTRACTORS LLC**  APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 09/26/2017 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | BEN HARRY STONE<br>MICHAEL BRANT PETTIS |
| ATTORNEYS FOR APPELLEE: | CHRISTOPHER SOLOP<br>BRENDA TANNER REDFERN<br>JOHN T. ANDRISHOK<br>STEVEN B. LOEB |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART; AND REVERSED AND REMANDED IN PART - 12/18/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., WILSON AND GREENLEE, JJ.**

**CARLTON, P.J., FOR THE COURT**:

¶1.     This case involves a construction dispute between the Mississippi State Port Authority at Gulfport and Southern Industrial Contractors LLC (SIC).  After the Port Authority terminated its contract with SIC, SIC filed a motion to compel arbitration, or alternatively, a one-count complaint for breach of contract, in the Circuit Court of the First Judicial District of Hinds County, Mississippi.  The Port Authority moved to dismiss SIC's motion to compel

arbitration, arguing that (1) the contract between the parties did not contain a binding arbitration agreement; (2) SIC had effectively asserted a tortious wrongful-termination claim and failed to comply with the Mississippi Tort Claims Act (MTCA) prior to filing that claim; and (3) venue is improper because the lawsuit should be heard in the First Judicial District of the Harrison County Circuit Court of Mississippi. The circuit court summarily granted SIC's motion to compel arbitration, and denied the Port Authority's motion to dismiss. The Port Authority appeals both orders.

¶2.     We find that the contract between the parties does not contain a binding arbitration agreement, and we reverse and render the circuit court's order compelling arbitration for this reason. We further find that the MTCA does not apply to SIC's breach of contract claim, and, thus, we affirm the circuit court's denial of the Port Authority's motion to dismiss as to that issue. Finally, we find that venue is improper in the First Judicial District of Hinds County, Mississippi, and we, therefore, reverse and remand on this issue, with instructions to the circuit court that this lawsuit should be transferred to the First Judicial District of Harrison County, Mississippi, pursuant to Mississippi Code Annotated section 11-11-3 (Rev. 2004), which is Mississippi's general circuit-court venue statute.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶3.     This dispute arises out of a public-works contract that was awarded by the Port Authority to SIC (the Contract) for a construction project known as West Pier Facilities, Project 305 (the Project). The Project is for the construction of a 1,300-foot-long by 226-

2

foot-wide transit shed and two smaller buildings.[1]  The Port Authority and SIC executed the Contract on July 25, 2014.

¶4.    During the course of construction, SIC encountered large underground debris fields in the same location where SIC was to drive the foundation pilings for the transit shed.   The debris removal resulted in extra work for SIC, construction delays ensued, and disputes arose between the Port Authority and SIC regarding timing and payment for the additional work. Ultimately, the Port Authority terminated the Contract in a letter dated September 14, 2016, entitled "NOTICE OF MATERIAL BREACH OF CONTRACT . . .  AND NOTICE OF TERMINATION."  In that letter, the Port Authority cited to paragraph 29 of the general conditions of the Contract and stated that in accordance with that provision, it was terminating the Contract for cause.   The letter then provided the specific reasons for termination, with citations to specific Contract provisions.

¶5.    On November 11, 2016, counsel for SIC sent an email to counsel for the Port Authority asking whether the Port Authority would be "willing to resolve all claims and contract disputes by arbitration in the event that the present efforts to negotiate a settlement fail." Counsel for the Port Authority responded that same day, sending an email in which he said that "[the Port Authority], as a state agency, cannot agree to arbitration." By letter dated

---

[1] The Project is one of many projects that are part of a massive, on-going Port of Gulfport Restoration Program that is being funded by a Community Development Block Grant (CDBG) Sub-grant Agreement between the Mississippi Development Authority (MDA) and the Port Authority.  The MDA is responsible for administering Hurricane Katrina disaster-recovery programs that are funded by CDBG funds and overseen by the United States Department of Housing and Urban Development (HUD).  Recipients of CDBG funds must comply with an array of federal rules and regulations when using CDBG funds on any given project.

November 15, 2016, SIC sent the Port Authority a "notice of intention to arbitrate . . . the claims and contract disputes between SIC and the [Port Authority] arising out of the . . . Project." In its notice, SIC specified that "[t]he nature of the dispute involves losses sustained by SIC as a result of the [Port Authority's] breach of its contractual obligations." SIC quantified each of its claims in its notice, including a line-item for "wrongful termination" in the amount of $10,000,000.

¶6.    Two days later, SIC filed its motion to compel arbitration in the Hinds County Circuit Court, alleging that "[t]he [Port Authority] is . . . liable for all losses sustained by SIC as a result of the [Port Authority's] breach of its contractual obligations," and asking the circuit court to enter an order compelling the Port Authority to engage in binding arbitration to resolve the matter. In support of its motion to compel arbitration, SIC relied upon Section 8 of Attachment 5 to the Contract (sometimes referred to as Section 8).[2] Attachment No. 5 is titled "Mississippi Development Authority Special Provisions to be included in all Contracts between the Subrecipient and Contracted Parties and in ALL Contracts between Contracted Parties and their Subcontractors." Section 8 of Attachment 5 provides:

> 8. The Subrecipient [Port Authority] and the Contracted Party [SIC] agree to resolve all claims and contract disputes by negotiations, arbitration, litigation, or other means as provided in the Contract documents and state law, prior to submission of any related change order or Contract Amendment to MDA for review and approval, in order to obtain a grant eligibility or allowability determination.

---

[2] As noted in the Port Authority's principal brief, the Contract has not been included in the record in its entirety because the general conditions, supplemental conditions, specifications, and contract drawings comprise over 1,150 pages. The parties have included in the record the Contract excerpts that they believe are relevant to this appeal.

4

¶7.    Alternatively, SIC included in its motion to compel arbitration its complaint against the Port Authority.  SIC asserted a single count, "COUNT I: BREACH OF CONTRACT," alleging that "[t]he [Port Authority's] actions and omissions constitute a breach of the contract between SIC and [the Port Authority] for which the [Port Authority] is liable to SIC."  SIC further alleged that it is entitled to liquidated damages for an amount not less than $10,039,371.30, and "damages in the amount of $10,000,000 for its wrongful termination."

¶8.    The Port Authority responded by filing a motion to dismiss in which it asserted that (1) there was not an enforceable agreement to arbitrate between the parties and that the Port Authority does not have the authority to agree to arbitrate under Mississippi law; (2) upon dismissal of the motion to compel arbitration, the circuit court should dismiss all alternative claims for relief which fall within the purview of the MTCA because SIC did not provide the required ninety-days' written notice under the MTCA prior to filing its tort claim for wrongful termination;[3] and (3) venue is improper because the lawsuit should be heard in the Circuit Court of the First Judicial District of Harrison County, Mississippi.

¶9.    After holding a hearing on the parties' motions, the circuit court, in separate, one-page orders, summarily granted SIC's motion to compel arbitration and denied the Port Authority's motion to dismiss.

¶10.   The Port Authority appeals both orders, asserting three primary issues:  (1) whether the parties agreed to binding arbitration; (2) whether the MTCA applies to SIC's wrongful

---

[3] Before the circuit court, the Port Authority also argued that the parties had engaged in negotiations to the exclusion of arbitration, and that the Port Authority is entitled to discretionary-function immunity under Mississippi Code Annotated section 11-46-9 (Rev. 2004) of the MTCA.  The Port Authority does not raise these issues on appeal.

termination-of-contract claim; and (3) whether venue is improper in the First Judicial District of Hinds County, Mississippi, requiring dismissal or transfer to the First Judicial District of Harrison County, Mississippi, pursuant to the applicable venue statute.

## STANDARD OF REVIEW AND OTHER APPLICABLE STANDARDS

¶11.    "A grant or denial of a motion to compel arbitration is reviewed de novo." *Harrison Cty. Commercial Lot LLC v. H. Gordon Myrick Inc.*, 107 So. 3d 943, 949 (¶12) (Miss. 2013); *Driver Pipeline Co. Inc. v. Williams Transp. LLC*, 104 So. 3d 845, 847 (¶5) (Miss. 2012). A de novo standard of review also applies when reviewing a trial court's denial of a motion to dismiss. *Booneville Collision Repair Inc. v. City of Booneville*, 152 So. 3d 265, 269 (¶9) (Miss. 2014).  Additionally, "[c]ontract interpretation is a question of law that is reviewed de novo." *Driver Pipeline*, 104 So. 3d at 847 (¶5).  Finally, regarding venue, the Mississippi Supreme Court has held that a trial court's ruling regarding venue will not be disturbed "unless it clearly appears that there has been an abuse of discretion or that the discretion has not been justly and properly exercised under the circumstances of the case.  But if the interpretation of a venue statute is at issue, this Court will review the trial court's [venue] decision de novo." *Holmes v. McMillan*, 21 So. 3d 614, 617 (¶8) (Miss. 2009) (internal quotation mark omitted).

¶12.    SIC, as the party seeking to invoke arbitration under Section 8 of Attachment 5 to the Contract, bears the burden of establishing that this provision creates a binding arbitration agreement. *Wellness Inc. v. Pearl River Cty. Hosp.*, 178 So. 3d 1287, 1292 (¶14) (Miss. 2015).  The courts apply a two-prong test in determining whether a motion to compel

6

arbitration should be granted:

> Under the first prong, the court should determine whether the parties have agreed to arbitrate the dispute . . . . In order to determine if the parties have agreed to arbitrate the dispute, two considerations are taken into account: (1) whether there is a valid arbitration agreement; and (2) whether the parties' dispute is within the scope of the arbitration agreement. If the court determines that the parties did in fact agree to arbitrate their dispute, the second prong is applied. The United States Supreme Court has instructed that the second prong is whether legal constraints external to the parties' agreement foreclosed arbitration of those claims.

*Driver Pipeline*, 104 So. 3d at 849 (¶12) (citations and internal quotation marks omitted).

¶13. Although the Mississippi courts recognize the "liberal federal policy favoring arbitration," *Qualcomm Inc. v. Am. Wireless License Grp. LLC*, 980 So. 2d 261, 268 (¶15) (Miss. 2007), the courts "will not construe arbitration agreements so broadly 'as to encompass claims and parties that were not intended by the original contract.'" *Driver Pipeline*, 104 So. 3d at 850 (¶13) (quoting *Smith ex rel. Smith v. Captain D's LLC*, 963 So. 2d 1116, 1119 (¶11) (Miss. 2007)). This is so because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.*

## DISCUSSION

### I. Whether Section 8 of Attachment 5 to the Contract is a Binding Arbitration Agreement

¶14. As noted, the arbitration language at issue in this case is contained in Section 8 of Attachment 5 to the Contract, which provides as follows:

> **Attachment No. 5. Mississippi Development Authority Special Provisions to be included in all Contracts between the Subrecipient and Contracted Parties and in ALL Contracts between Contracted Parties**

7

**and their Subcontractors.**

. . . .

> 8. The Subrecipient [Port Authority] and the Contracted Party [SIC] agree to resolve all claims and contract disputes by negotiations, arbitration, litigation, or other means as provided in the Contract documents and state law, prior to submission of any related change order or Contract Amendment to MDA for review and approval, in order to obtain a grant eligibility or allowability determination.

The Port Authority asserts that Section 8 is not a binding arbitration clause because, by its plain terms, the parties have not manifested their intent to make arbitration their sole remedy or to waive their rights to litigation.

¶15.    In particular, the Port Authority argues that for an arbitration provision in a contract to be enforceable, that provision must make arbitration the only remedy. *Brennan v. King*, 139 F.3d 258, 265-67 (1st Cir. 1998); *see Red Brick Partners-Brokerage LLC v. Staubach Co.*, No. 4:08cv82-SPM-WCS, 2008 WL 2743689, at *4 (N.D. Fla. 2008) ("Inherent to the notion of agreeing to arbitrate . . . disputes through to completion is that such procedures must be mandatory and exclusive.").  Further, the Mississippi Supreme Court "traditionally has viewed arbitration agreements as tantamount to a settlement between the parties where the arbitration agreement would be the *exclusive* source of rights and liabilities of the parties." *Robinson v. Henne*, 115 So. 3d 797, 802 (¶15) (Miss. 2013) (emphasis added) (internal quotation mark omitted); *City of Hattiesburg v. Precision Constr. LLC*, 192 So. 3d 1089, 1096 (¶27) (Miss. Ct. App. 2016).  Additionally, "when parties agree to binding arbitration, they waive their rights to litigate . . . ." *Storm Reconstruction Servs. Inc. v. Kellogg Brown & Root Servs. Inc.*, No. 1:06CV726-LG-JMR, 2007 WL 3124559, at *3 (S.D.

8

Miss. Oct. 24, 2007); *see also Qualcomm*, 980 So. 2d at 269 (¶15). Section 8 provides that the parties "agree to resolve all claims and contract disputes by negotiations, arbitration, litigation, or other means as provided in the Contract documents and state law . . . ." The Port Authority asserts that the parties did not agree to make arbitration their exclusive remedy under the plain wording of this provision, nor did they agree to waive their right to resolve their claims by litigation. In short, the Port Authority asserts that Section 8 of the Contract does not create a binding arbitration agreement between the parties.

¶16. SIC, on the other hand, asserts that Section 8 clearly and unambiguously provides that the parties "agree" to resolve their disputes by any of the means set forth in the provision, including arbitration, and SIC has chosen to arbitrate the dispute from the alternatives offered. SIC asserts that an arbitration provision need not be identified as an exclusive means of dispute resolution; rather, once a party elects arbitration, the other party cannot neutralize that choice by insisting on litigating in court. For this proposition, SIC relies upon cases that hold that clauses providing, for example, that the other party *may* elect to submit a dispute to binding arbitration, are binding notwithstanding use of the word "may."[4]

---

[4] *See, e.g.*, *Benihana of Tokyo LLC v. Benihana Inc.*, 73 F. Supp. 3d 238, 244 (S.D.N.Y. 2014) ("[E]ither party by written notice to the other party may elect to submit the dispute to binding arbitration in accordance with the foregoing procedure."); *Hanover Ins. Co. v. Kiva Lodge Condo Owners' Ass'n Inc.*, 221 So. 3d 446, 448-49 (Ala. 2016) ("Any Claim arising out of or related to the Contract . . . may at the election of either party . . . be subject to arbitration."); *Celtic Life Ins. Co. v. McLendon*, 814 So. 2d 222, 224 (Ala. 2001) ("Controversies or disputes arising out of, in connection with, or relating to this certificate which cannot be resolved to the satisfaction of both parties, may be resolved by arbitration . . . ."); *Chiarella v. Vetta Sports Inc.*, 1994 WL 557114, at * 3 (S.D.N.Y. 1994) ("[E]ither party may submit the dispute to the American Arbitration Association . . . in New York City for resolution . . . .").

¶17. We find that the plain language of Section 8 of Attachment 5 to the Contract shows that there was no agreement to arbitrate between the parties. Accordingly, we hold that the circuit court erred in granting SIC's motion to compel arbitration. The cases SIC relies upon in support of its argument that Section 8 is a binding arbitration agreement are distinguishable and do not support its argument on this issue. Unlike the provisions in the cases SIC cites, Section 8 does not use express, unconditional language providing either party with the unilateral right to submit a dispute to binding arbitration. Instead, it provides the parties with various dispute resolution options, none to the exclusion of the other.

¶18. Further, in the cases SIC relies upon, either (1) the parties had unequivocally agreed to arbitrate a set of claims in the contract;[5] or (2) the contract contained detailed arbitration provisions—which provided, for example, for the selection of arbitrators, the location of arbitration, and the rules governing arbitration—which confirmed that the parties agreed to arbitrate their disputes.[6] In contrast, Section 8 is part of Attachment 5 of the Contract, which sets forth the *MDA's* Standard Terms and Conditions, and basically serves to notify the

---

[5] *See, e.g.*, *Benihana of Tokyo*, 73 F. Supp. 3d at 244; *Chiarella*, 1994 WL 557114, at **2-3.

[6] *See, e.g.*, *Hanover Ins. Co.*, 221 So. 3d at 456 (arbitration provision provided that arbitration was to be "in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association . . . unless the parties mutually agree otherwise."); *Celtic Life Ins. Co.*, 814 So. 2d at 224-225 ("These latter clauses resolve any ambiguity created by the use of the word 'may' and make it clear that arbitration is not 'optional.'"); *Benihana of Tokyo*, 73 F. Supp. 3d at 244 (Arbitration to be settled by "the [AAA] in the City of New York" by an "arbitration panel []consist[ing] of three (3) members, one (1) of whom shall be chosen by Licensor, and one (1) by Licensee and the other by the two (2) so chosen."); *Chiarella*, 1994 WL 557114, at *2 ("[E]ither party may submit the dispute to the []AAA[] in New York City for resolution before a single arbitrator chosen by the AAA.").

10

parties that they were free to choose how to resolve their disputes by including a dispute resolution provision in the main Contract or by leaving the matter open to the options provided by state law. We find no legal basis for SIC's proposition that the open-ended language of Section 8 converts to a binding arbitration agreement simply because the parties left the matter of dispute resolution open to options provided under state law.

¶19. SIC also relies upon *Harrison County Commercial Lot LLC v. H. Gordon Myrick Inc.*, 107 So. 3d 943 (Miss. 2013), for the proposition that arbitration need not be the exclusive dispute resolution mechanism in a contract in order for it to be enforceable. *Id.* at 950-51 (¶¶16-18). We also find that *Myrick* is distinguishable. In *Myrick*, the contract provided for two categories of claims—one category of claims was subject to arbitration, and the other category, "[c]laims relating to aesthetic effect," *id*. at 950 (¶16), could be litigated. The Mississippi Supreme Court held that the separate arbitration provisions "state[d] clearly that mediation is a condition precedent to arbitration, and arbitration is the sole method of dispute resolution for all claims, except those related to aesthetic effect." *Id.* at 951 (¶18).[7] That is not the case with respect to the plain language of Section 8 in this case.

¶20. Finally, SIC argues that the lack of details regarding how arbitration is to be

[7] The separate arbitration provisions provided, in relevant part:

4.6.1 Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived . . . shall . . . be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Paragraph 4.5.

4.6.2 Claims not resolved by mediation shall be decided by arbitration.

*Myrick*, 107 So. 3d at 950 (¶16).

11

conducted should not be a consideration in determining whether Section 8 is a binding arbitration provision because the Mississippi Arbitration Act provides default rules governing the arbitration process.[8] We acknowledge that the lack of details regarding how arbitration is to be conducted is not a dispositive factor, but it does lend additional support to our determination that the plain language of Section 8 does not convey the requisite intent to arbitrate which must be present in order to bind the parties to arbitration. *Driver Pipeline*, 104 So. 3d at 850 (¶13) ("Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."). In the words of the supreme court in *Driver Pipeline*, "[b]ased on what is before us, we find that the parties did not agree to submit to arbitration, and we will not require parties to arbitrate when they did not agree to do so." *Id.*

¶21.    As addressed above, in determining whether a motion to compel arbitration should have been granted, we must first "determine if the parties have agreed to arbitrate the dispute, [which involves] two considerations [that] are taken into account:  (1) whether there is a valid arbitration agreement and (2) whether the parties' dispute is within the scope of the arbitration agreement." *Id.* at 849 (¶12). In light of our finding that the plain language of the Contract reveals no agreement to arbitrate, our "analysis stops with the first consideration of [this] test, and we need not go any further." *Id.* at 850 (¶14). We reverse and render the circuit court's order granting SIC's motion to compel arbitration.

---

[8] *See, e.g.*, Miss. Code Ann. § 11-15-109 (Rev. 2004) (providing for the appointment of arbitrators); Miss. Code Ann. § 11-15-113 (Rev. 2004) (governing the hearing process); Miss. Code Ann. § 11-15-117 (Rev. 2004) (addressing subpoenas and discovery).

## II. Whether SIC's Wrongful Termination Claim Falls Within the Purview of the MTCA

¶22. Having reversed the circuit court's order granting SIC's motion to compel arbitration, we next address the Port Authority's assertion that the circuit court's order denying its motion to dismiss should be reversed because SIC's wrongful termination claim in its complaint is covered by the MTCA. Because SIC did not provide the Port Authority with ninety days' written notice as required under the MTCA, *see* Mississippi Code Annotated section 11-46-11(1) (Rev. 2004),[9] the Port Authority asserts that this claim should be dismissed.

¶23. The Port Authority bases its argument that SIC has asserted a tortious wrongful termination claim on one sentence from SIC's complaint alleging that "SIC is entitled to damages in the amount of $10,000,000 for its wrongful termination." Relying primarily upon *Suddith v. the University of Southern Mississippi*, 977 So. 2d 1158 (Miss. Ct. App. 2007), the Port Authority argues that SIC's wrongful termination claim is a state law tort claim within the purview of the MTCA.

¶24. The Port Authority's reliance on *Suddith* is misplaced. In *Suddith*, the plaintiff brought numerous claims against the University and others, including federal claims, a breach of contract claim under the plaintiff's employment contract, and various state-law tort claims. 977 So. 2d at 1165 (¶5). This Court addressed Suddith's breach of contract claim on the merits, affirming the trial court's grant of summary judgment in the defendants' favor

---

[9] Questions concerning application of the MTCA are subject to a de novo standard of review. *Kelley LLC v. Corinth Pub. Utils. Comm'n*, 200 So. 3d 1107, 1112-13 (¶14) (Miss. Ct. App. 2016).

based on its determination that the University and others "did not breach Suddith's contract by failing to act on his untimely grievance." *Id.* at 1177 (¶42).

¶25. This Court then held that Suddith's tort claims were governed by the MTCA, *id.* at (¶44), and analyzed those claims under the MTCA. In doing so, we specified that "Suddith's tort claims . . . included negligence, tortious interference with Suddith's employment contract, intentional infliction of emotional distress, negligent infliction of emotional distress, outrage, promissory estoppel, equitable estoppel, and detrimental reliance." *Id.* at (¶43). Our review of SIC's complaint shows that SIC makes no such claims here, nor does SIC assert any claim based upon any implied covenants, such as an implied covenant of good faith and fair dealing. As such, we find that the Port Authority's assignment of error on this issue is without merit.

¶26. In particular, SIC's lawsuit does not reference negligence or any delictual acts on the part of the Port Authority. In its complaint, SIC alleges one count against the Port Authority, entitled "COUNT I: BREACH OF CONTRACT," which provides: "[t]he [Port Authority's] actions and omissions constitute a breach of the contract between SIC and [the Port Authority] for which the [Port Authority] is liable to SIC." Attached to SIC's complaint is SIC's notice of intention to arbitrate that, consistent with the allegations in SIC's lawsuit, provides that "[t]he nature of the dispute involves losses sustained by SIC as a result of the [Port Authority's] breach of its contractual obligations." SIC quantified each of its claims in its notice, including a line-item for "wrongful termination" in the amount of $10,000,000. Although SIC does not expressly cite the termination clause of the Contract, we find no

14

indication in SIC's complaint, including the attached notice of intention to arbitrate, that SIC is seeking anything more than damages incurred as a result of the Port Authority's alleged wrongful breach of the Contract, including the termination provision. SIC is the master of its complaint and is entitled to control the type of claims asserted in its lawsuit. *See, e.g.*, *Patton Med. of Gulf Coast Inc. v. Relle*, No. 2017-CA-00122-COA, 2018 WL 1602518, at *12 n.8 (¶66) (Miss. Ct. App. Apr. 3, 2018).

¶27. In short, the MTCA is not implicated in this case. A contract exists between the parties, SIC has brought this action for breach of that specific contract and has not alleged any breach of some duty independent of the Contract. *See, e.g.*, *Hazell Mach. Co. v. Shahan*, 249 Miss. 301, 317, 161 So. 2d 618, 623 (1964) ("Actions at law of a personal nature may be, in form, either ex contractu—that is, based upon contract—or ex delicto—based upon tort . . . and a mere matter of contract cannot be converted into a tort . . . . In a general way, a tort is distinguished from a breach of contract in that the latter arises under an agreement of the parties, whereas the tort, ordinarily, is a violation of a duty fixed by law, independent of contract or the will of the parties. . . ."); *Clausell v. Bourque*, 158 So. 3d 384, 391 (¶23) (Miss. Ct. App. 2015) ("[T]he breach of a contract (whether described as negligent or not) is not actionable in tort under an ordinary negligence theory unless breaching the contract also breached a duty of care recognized by tort law.") (internal quotation marks omitted). We affirm the circuit court's order denying the Port Authority's motion to dismiss on this issue.

### III. Whether Venue is Improper in the First Judicial District of Hinds County

¶28. Having determined that the parties did not agree to arbitrate this matter, and that SIC's breach of contract claim is not subject to the MTCA, we turn to the Port Authority's final assignment of error concerning the proper venue for this matter. The Port Authority asserts that venue is improper in the First Judicial District of Hinds County, and that the proper venue for this lawsuit is in the First Judicial District of Harrison County because the Port Authority resides in Harrison County, the events giving rise to the lawsuit occurred in Harrison County, and the Port Authority's principal and only place of business is in Harrison County. We find that pursuant to Mississippi's general venue statute, Mississippi Code Annotated section 11-11-3 (Rev. 2004), venue is proper in the First Judicial District of Harrison County.

¶29. Mississippi Rule of Civil Procedure 82(b) provides that venue shall be governed exclusively by statute. In this case, there is not a specific statute governing venue under the Port Authority's enabling legislation, the State Ports and Harbors Law (Mississippi Code Annotated section 59-5-1 through section 59-5-69 (Rev. 2013), nor is there any other specific statutory provision governing venue in this matter.[10] As such, venue for SIC's breach of contract claim is governed by the general venue statute for circuit courts, section 11-11-3, which provides, in relevant part, as follows:

> Civil actions of which the circuit court has original jurisdiction shall be commenced in the county where the defendant resides, or, if a corporation, in the county of its principal place of business, or in the county where a substantial alleged act or omission occurred or where a substantial event that

---

[10] For the reasons addressed below, we find that Mississippi Code Annotated section 11-45-1 (Rev. 2012), which governs venue for certain actions against the State of Mississippi, does not apply to SIC's breach of contract lawsuit against the Port Authority.

16

caused the injury occurred.

Miss. Code Ann. § 11-11-3(1)(a)(i) (Rev. 2004).

¶30. SIC does not dispute that the Port Authority's "principal place of business" is in Harrison County, nor does it provide any record citation, argument, or authority that a "substantial event" giving rise to its breach of contract claim occurred anywhere other than in Harrison County. SIC, however, asserts that venue is proper in Hinds County because the Port Authority is an "agency of the state", *see* Miss. Code Ann. § 59-5-21 (Rev. 2013), and that both the Mississippi Supreme Court and this Court have recognized that a state agency "resides" in Hinds County for venue purposes. *See Moore v. Bell Chevrolet-Pontiac-Buick-GMC LLC*, 864 So. 2d 939, 944-45 (¶¶22-23) (Miss. 2004); *Office of Governor Div. of Medicaid v. Johnson*, 950 So. 2d 1033, 1035 (¶5) (Miss. Ct. App. 2006).[11]

¶31. In *Moore*, the Mississippi Supreme Court relied upon Mississippi Code Annotated section 11-45-1 (Rev. 2012) in determining that Hinds County was the proper venue for a discovery lawsuit brought by the Mississippi Automobile Dealers against the attorney general in his official capacity. 864 So. 2d at 944-45 (¶¶22-23). In addressing where the Attorney

---

[11] SIC also cites *Gaskin v. Commonwealth of Pennsylvania*, No. 94-4048, 1995 WL 154801 (E.D. Pa. Mar. 30, 1995), for the proposition that "[f]or venue purposes, the residence of a state agency or state official is the state [capital], even when branch offices of the state agency are maintained in other parts of the state." *Id.* at *1. This case is not binding authority, nor do we find it persuasive. The Port Authority's only location is in Harrison County. It has no branch offices. Further, even the Eastern District of Pennsylvania has recognized that for venue purposes, a state official only "resides" in the state capital if the official has "statewide jurisdiction," and otherwise the residence of a state official is where he performs his official duties. *See Tirado v. Stepanik*, No. 95-1103,1997 WL 337141, at *1-2 (E.D. Pa. 1997). Here the record and the applicable statutes reflect that the official business of the Port Authority takes place in Harrison County.

17

General's Office "resides" for purposes of determining venue under the general chancery court venue statute,[12] the supreme court looked to the portion of section 11-45-1 italicized below, which addresses where lawsuits against the state may be brought, as follows:

> Any person having a claim against the State of Mississippi, after demand made of the auditor of public accounts therefor, and his refusal to issue a warrant on the treasurer in payment of such claim, may, where it is not otherwise provided, bring suit therefor against the state, *in the court having jurisdiction of the subject matter which holds its sessions at the seat of government. . . .*

Miss. Code Ann. § 11-45-1 (emphasis added). The supreme court further observed that Article 4, Section 101 of the Mississippi Constitution provides that "[t]he seat of government of the state shall be at the city of Jackson." *See Moore*, 864 So. 2d at 945 (¶23). From this, the supreme court held that "[c]learly, the proper county in which to have sued the Attorney General's Office, which is a state agency, is the county in which the seat of government is located." *Id.* Citing *Moore* for this proposition, this Court, in *Johnson*, held that proper venue under section 11-5-1 belonged in Hinds County for a plaintiff's appeal from the Division of Medicaid's denial of nursing home benefits. *Johnson*, 950 So. 2d at 1035 (¶5).

¶32. We find that *Moore* and *Johnson* are distinguishable and do not apply here for several reasons, and we hold that for purposes of determining venue under section 11-11-3 in this case, the Port Authority "resides" in the First Judicial District of Harrison County, Mississippi. We first observe that the agencies in *Moore* and *Johnson* had their principal places of business in Hinds County (the Office of the Attorney General and the Mississippi

---

[12] Mississippi Code Annotated section 11-5-1 (Rev. 2002) provides, in relevant part, that "all cases not otherwise provided may be brought in the chancery court of any county where the defendant, or any necessary party defendant, may reside or be found. . . ."

18

Division of Medicaid, respectively),[13] so there was no factual basis to challenge where those agencies "reside" for venue purposes. Further, the Mississippi Supreme Court's recent decision in *Purdue Pharma L.P. v. State*, No. 2017-IA-00300-SCT, 2018 WL 5077693 (Miss. Oct. 18, 2018), shows that the "location" of a state agency is the relevant consideration. In *Purdue Pharma*, the Mississippi Supreme Court applied section 11-11-3(1)(b), which places venue in a civil action against a nonresident "in the county where the plaintiff resides or is domiciled." *Id.* at *4 (¶17). The supreme court held that venue in Hinds County was appropriate because that is where "the State's Medicaid agency is located . . . along with most state agencies." *Id.* at *5 (¶18).

¶33. In this case the Port Authority's offices, operations, employees, and commissioners

---

[13] As noted, in *Moore v. Bell Chevrolet-Pontiac-Buick-GMC LLC*, 864 So. 2d 939 (Miss. 2004), the attorney general was sued in his official capacity, and we take judicial notice that the Office of the Attorney General is located in Jackson, Mississippi.

Similarly, the defendant in the *Office of the Governor Division of Medicaid v. Johnson*, 950 So. 2d 1033 (Miss. Ct. App. 2006), the Mississippi Division of Medicaid, is located in Jackson, Mississippi. In *Johnson*, the plaintiff appealed Medicaid's denial of his nursing home benefits in the Chancery Court of Walthall County. 950 So. 2d at 1034. In addressing the venue issue, this Court specifically acknowledged that "it was undisputed that Medicaid does not have an office in Walthall County," and ultimately determined that venue was proper in Hinds County Chancery Court. *Id.* at 1035.

Additionally, in *Board of Trustees of State Institutions of Higher Learning v. Van Slyke*, 510 So. 2d 490 (Miss. 1987), a case also cited by SIC, the supreme court held that the chancery court erred in refusing to transfer this lawsuit against the Board of Trustees to the First Judicial District of Hinds County, specifically acknowledging that "all parties agree, and it is a matter of common knowledge, that the 'public body' subject to this action is located in Hinds County." *Id.* at 492-93. The supreme court refused to subject the Board of Trustees to suit in any county where it conducted business, which would require it to defend actions in all eighty-two countries. *Id.* at 493. These circumstances are not present in this case.

are located in Harrison County. Specifically, the Port Authority was created as a separate governmental entity with the express right to sue and be sued in its own name, and is charged with the oversight of the Port of Gulfport. *See* Miss. Code Ann. §§ 59-5-21, 59-5-37 (Rev. 2013). The record and applicable statutory law reflect that the Port Authority's principal office, and all Port facilities, are entirely situated in the City of Gulfport, Harrison County, Mississippi, *see* Miss. Code Ann. § 59-5-37(3)(a) (referencing the Port Authority's operations and facilities "at the State Port at Gulfport, Mississippi"), and all members of the Port Authority Board of Commissioners are required to be residents of Harrison County. *See* Miss. Code Ann. § 59-5-21.

¶34. We find no Mississippi case in which a state agency under these circumstances has been deemed to reside in Hinds County for venue purposes. Further, decisions in our sister states support the proposition that the Port Authority both "resides" and has its "principal place of business" in Harrison County. *See Ala. Youth Servs. Bd. v. Ellis*, 350 So. 2d 405, 408 (1977) (recognizing that "[a] governmental body is generally regarded as having its residence for purposes of venue in the county where its principal place of business is located, or in the place where its domicile is fixed by law." (quoting 92A C.J.S. *Venue* § 115) (1977));[14] *see also Dickinson v. Fla. Nat'l Org. for Women Inc.*, 763 So. 2d 1245, 1247 (Fla. Dist. Ct. App. 2000) ("Pursuant to section 47.011 Florida Statutes (1999), actions shall only be brought in the county where the defendant resides. In the case of state agencies, the county of 'residence' is where the agency's headquarters are located.").

---

[14] This same proposition is now found in 92A C.J.S. *Venue* § 101 (2010).

20

¶35. Also distinguishing the Port Authority from the defendant agencies in *Moore* and *Johnson* is that although the Port Authority is deemed a state agency under section 59-5-21, it possesses very unique legislative characteristics under its enabling legislation. We find it particularly relevant that the Port Authority is defined as a "governing authority," rather than an "agency" under the state public purchasing laws, as follows:

> The State Port Authority shall be considered to be a "governing authority" under the state public purchasing laws as that term is defined in Section 31-7-1 and used in Sections 31-7-1 through 31-7-73, and shall not be subject to the jurisdiction of the Department of Finance and Administration, the Public Procurement Review Board or the Bureau of Building, Grounds and Real Property Management . . . .

Miss. Code Ann. § 59-5-37(2)(b) (Rev. 2013). *Compare* Miss. Code Ann. § 31-7-1(a) (Supp. 2016) (defining "agency" under the state public purchasing laws, and specifically excepting the Mississippi State Port Authority), *with* Miss. Code Ann. § 31-7-1(b) (Supp. 2016) (defining "governing authority" under the state public purchasing laws and specifically including the Mississippi State Port Authority). The Contract the Port Authority entered with SIC arose from the Port Authority's procurement of a contractor for the Project, and we find no authority suggesting that a "governing authority," having no connection at all to Hinds County, is generally subject to venue in Hinds County in this context.

¶36. *Moore* and *Johnson* also lack precedential value in the case at hand because, as noted above, the supreme court in *Moore* made its venue determination looking only at the portion of section 11-45-1 addressing where lawsuits against the state may be brought, i.e., "in the court having jurisdiction of the subject matter which holds its sessions at the seat of government." *See Moore*, 864 So. 2d at 944-45 (¶¶22-23). The supreme court, however, did

21

*not* address the first portion of section 11-45-1, which, by its plain terms, limits application of this statute to those cases in which demand is first made on the state auditor and he has refused to pay, i.e., "[a]ny person having a claim against the State of Mississippi, *after demand made of the auditor of public accounts therefor, and his refusal to issue a warrant on the treasurer in payment of such claim* may, where it is not otherwise provided, bring suit therefor against the state in the court having jurisdiction of the subject matter which holds its sessions at the seat of government . . . ." Miss. Code Ann. § 11-45-1 (emphasis added).

¶37.    This is relevant because in *Mississippi State Building Commission v. S & S Moving Inc.*, 475 So. 2d 159 (Miss. 1985), the Mississippi Supreme Court *did* address the first portion of section 11-45-1 in the context of a breach of contract claim against the state building commission, and held that section 11-45-1 did not apply. *Id.* at 162. The supreme court rejected the building commission's argument that S & S's breach of contract action against it should have been dismissed because it did not first follow the presentment procedures under section 11-45-1. *Id.* In making this determination, the supreme court held that section 11-45-1 applies only in cases where the state auditor has authority over the claim at issue, and does not apply to "a claim for damages for breach of contract." *Id.*

¶38.    We acknowledge that the supreme court in *S & S Moving* did not address the portion of section 11-45-1 that addresses where lawsuits against the State may be brought, as it had no reason to do so. Here, however, this issue is before us. We find no basis for applying the venue aspect of section 11-45-1 when the Mississippi Supreme Court has squarely held that this statute does not apply to cases in which the state auditor does not have authority over the

22

claim at issue—like SIC's breach of contract claim in this case. *S & S Moving Inc.*, 475 So. 2d at 162. For this additional reason, we find that the *Moore* decision, which did not address the first portion of section 11-45-1, does not support SIC's assertion that Hinds County is the proper venue in this breach of contract lawsuit against the Port Authority. We further find that *Johnson* does not support SIC's argument, as this Court relied on *Moore* in *Johnson* for the general proposition that venue is proper for a state agency in Hinds County, but, like the *Moore* court, did not address the applicability of section 11-45-1 to the particular case before it. *Johnson*, 950 So. 2d at 1035 (¶5).

¶39. Finally, as recognized in a respected Mississippi treatise, "venue rules operate to locate where within the state court system a civil action might be conveniently and fairly tried." 1 Jeffrey Jackson, Donald Campbell & Justin Matheny, MISSISSIPPI CIVIL PROCEDURE—MISSISSIPPI PRACTICE SERIES, § 3:1 at 252 (2018 ed.); *see Van Slyke*, 510 So. 2d at 492 ("[I]t is the uniform policy of judicial procedure in our state to bring all litigation in personam to the home of the defendant, and the [venue] statute must be construed in the light of that policy."). We find that this policy can only be served by locating venue for this case in Harrison County, where the Project, and the Port Authority's offices, operations, employees, and commissioners are located. Indeed, SIC, a foreign corporation, offers no factual basis for locating venue in Hinds County, Mississippi, but relies solely upon its legal argument that the Port Authority "resides" in Hinds County, an argument we reject above.

¶40. In sum, based upon our review of the record, and the applicable statutes, case law, and other authorities, we find that for venue purposes, the Port Authority "resides" in the First

23

Judicial District of Harrison County. Accordingly, we reverse the circuit court's decision denying the Port Authority's motion to dismiss on this issue, and remand this case to the circuit court for entry of an order transferring this case to Harrison County Circuit Court, First Judicial District. *See Fluker v. State*, 200 So. 3d 1148, 1149 (¶3) (Miss. Ct. App. 2016) ("[I]mproper venue is a reason to transfer a case, not to dismiss it.").

¶41. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART; AND REVERSED AND REMANDED IN PART.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**