ON APPLICATION FOR REHEARING
The original opinion in this case is withdrawn and the following corrected opinion is substituted in its place.
Defendants Jerry Russell and James Edwards were partners in a home respiratory therapy business located in Madison County, Alabama, known as J J Respiratory Service Company (JJ). Primarily, JJ rented respiratory equipment, oxygen equipment and oxygen. Approximately one-half of JJ's business related to the service of providing oxygen to patients and the other half of JJ's business related to the renting of other respiratory equipment such as IPPB (intermittent or immediate positive pressure breathing) machines. *Page 92 
Russell and Edwards d/b/a JJ sold the half of their business relating to the service of providing oxygen to their patients, to Birmingham Oxygen Service, Inc. (Birmingham Oxygen) in May of 1977. This transaction consisted of a series of three interrelating contracts. The first contract (purchase agreement) consisted of the sale of JJ's oxygen business (including the equipment and names of patients) to Birmingham Oxygen for: (1) The payment of $3,260.38 so that Russell and Edwards could pay off a bank note in that amount and (2) a $1,220.96 credit against the amount JJ owed Birmingham Oxygen for previously purchased merchandise. The second contract (non-competition agreement) provided that Russell and Edwards would "not compete with the business of Birmingham Oxygen Service, Inc., for a period of ten years. . . ." The second contract further provided that Russell and Edwards would exert "their `best efforts,' to obtain patients for Birmingham Oxygen Service, Inc., in order to build the business and enable the said Birmingham Oxygen Service Inc., to recover the expense and cost of this purchase." The third and final contract in this series gave Birmingham Oxygen a right of first refusal if JJ decided to sell the remainder of its business.
In June of 1977, JJ decided to sell the remainder of its business and Birmingham Oxygen desired to purchase the business. While the contract expressing the terms of this transaction designated Russell as the sole owner of the remaining assets of JJ, testimony during the trial showed that the partnership still existed on the date of the contract; that Edwards could not make it to the meeting concerning the sale; and that the Russell as sole owner designation was simply for convenience. Edwards did receive one-half of the proceeds of the sale and did give his consent to the sale of the remaining assets of JJ. Russell and Barney Eller, the President of Birmingham Oxygen, were the only individuals signing the agreement. Birmingham Oxygen paid to Russell (one-half going to Edwards) approximately $11,200 for the respiratory business of JJ. This included JJ's equipment, and accounts receivable. Russell also agreed not "to engage in or become interested, either directly or indirectly . . . in any corporation, partnership, sole proprietorship, association, or any business in competition with Birmingham Oxygen in the home care respiratory therapy field [in Madison County]." Edwards, however, did not sign any agreement relating to the second transaction. Russell testified that part of the "deal" was an offer of employment to him by Birmingham Oxygen. Birmingham Oxygen denies this.
Russell's wife, Maggie Waddell Russell, and her brother started a business during the summer of 1977 known as Respiratory Rental Company. Respiratory Rental engaged in the business of providing oxygen services to its patients. Russell admitted that he did the majority of the work of Respiratory Rental. Sometime during the fall of 1977, Russell and Edwards created a partnership that rented hospital equipment, including respiratory equipment. This business was known as ER Rental Company. It was undisputed that the combination of the services offered by Respiratory Rental and ER Rental Company equated the services previously offered by JJ.
Birmingham Oxygen never engaged in the business of oxygen services or respiratory services purchased from JJ in Madison County. However, Birmingham Oxygen's wholly owned subsidiary, Southeastern Medical, Inc. (Southeastern Medical), did engage in the business purchased from JJ.
On April 18, 1979, Birmingham Oxygen filed suit against Jerry Russell, Jerry Russell d/b/a JJ Respiratory Service Co., and Jerry Russell d/b/a Respiratory Services. The complaint was later amended to include as defendants James Edwards, Maggie Waddell Russell, Maggie and Jerry Russell d/b/a Respiratory Rental Co., and Jerry Russell and James Edwards d/b/a ER Hospital Rental Company. Birmingham Oxygen sought damages for breach of contract and injunctive relief. On April 23, 1980, the trial court granted an injunction restraining Jerry Russell, James Edwards, and Maggie Russell from engaging in the *Page 93 
respiratory therapy care business or competing with the plaintiffs for seven years. Defendants appeal.
Defendants argue initially that neither Birmingham Oxygen nor Southeastern Medical has standing to enforce the non-competition clause contained in the contracts entered into between Birmingham Oxygen and the defendants. Defendants contend that Birmingham Oxygen has no standing to enforce the contract because it is not now operating, nor has it ever operated, an oxygen and respiratory services business in Madison County. Therefore, defendants argue, they are not competing with Birmingham Oxygen.
Russell and Edwards contracted, in May of 1977, "not to compete with the business of Birmingham Oxygen Service, Inc., for a period of ten years from the date of this instrument." The phrase "business of Birmingham Oxygen Service Inc." was not defined in the contract. This clause, however, must deal with the oxygen service business since only this aspect of JJ was sold at this time. In any case, if the corporate entity of Birmingham Oxygen Service, Inc., does not operate an oxygen services business, Russell and Edwards cannot be in competition with it, for Russell and Edwards did not contract to refrain from operating altogether, just to refrain from competing with Birmingham Oxygen. This principle also applies to the non-competition clause associated with the sale of the respiratory services aspect of JJ. Therefore, Russell and Edwards did not breach their contract with Birmingham Oxygen.
Furthermore, Southeastern Medical has no standing to enforce the contract entered into by Birmingham Oxygen and Russell and Edwards. A third person has no rights under a contract between others unless the contracting parties intend that the third person receive a direct benefit enforceable in court. See, Slyv. South Central Bell Telephone Co., 387 So.2d 137 (Ala. 1980);Wood Chevrolet Co. v. Bank of the Southeast, 352 So.2d 1350
(Ala. 1977); Federal Mogul Corp. v. Universal Construction Co.,376 So.2d 716 (Ala.Civ.App.), cert. denied, 376 So.2d 726 (Ala. 1979). Since it is apparent from the face of the contract that Southeastern Medical is not a third party beneficiary, Southeastern Medical has no standing to enforce it in court.
Appellees argue that it makes no difference whether Birmingham Oxygen or Southeastern Medical enforces the non-competition agreement, since Barney C. Eller wholly owns both corporations and it was him with whom Edwards and Russell dealt. This contention is without merit. A corporation is an entity created by compliance with statutory requirements. A corporation has the right to sue and be sued just like a natural person. Alabama Constitution, Article XII, § 240; Code 1975, § 10-2A-20 (2). A corporation, just like an individual, must enforce its own rights and privileges.
Appellees next contend that Birmingham Oxygen assigned the contracts to Southeastern Medical. The evidence upon which they base this contention is testimony by Henry Turner, a former employee of Birmingham Oxygen, now employed by Southeastern Medical, that "Southeastern Medical succeed[ed] to the business of Birmingham Oxygen . . . in Huntsville."
Appellees are correct in their assertion that an assignment of a contract may be either oral or written and no magic words are necessary. However, this without more is not enough to constitute an assignment. There must be an affirmative showing of an intent to assign. Strickland Co. v. Lesesne Ladd,160 Ala. 213, 49 So. 233 (1909). "The owner must do or say something which would indicate a transfer of his claim or right to another." 160 Ala. at 217, 49 So. 233 (emphasis added). There is no suggestion in the record of an act or statement by Birmingham Oxygen evidencing an intention to assign the non-competition agreement to Southeastern Medical. Absent such evidence, there can be no finding of an assignment. See, Loweryv. Peterson, 75 Ala. 109 (1883); Andalusia Motor Co. v.Mullins, 28 Ala. App. 201, 183 So. 456, cert. denied, 236 Ala. 474,183 So. 460 (1938). *Page 94 
The learned trial judge erroneously issued the injunction against the appellants.
Since we find dispositive the issue of whether either Birmingham Oxygen or Southeastern Medical may enforce the non-competition agreement with Russell and Edwards, we do not reach the other issues raised by appellants. Accordingly, the judgment is due to be reversed and the cause remanded.
REVERSED AND REMANDED.
APPLICATION FOR REHEARING OVERRULED AND OPINION CORRECTED.
FAULKNER, ALMON, EMBRY and ADAMS, JJ., concur.