# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CP-01714-COA

**WILLIAM WES FULGHAM AND FULGHAM LAW FIRM, PLLC**                                                      **APPELLANTS**

**v.**

**MORGAN & MORGAN, PLLC AND MORGAN & MORGAN, P.A.**                                                      **APPELLEES**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/16/2017 |
| TRIAL JUDGE: | HON. J. DEWAYNE THOMAS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANTS: | WILLIAM W. FULGHAM (PRO SE) LEVOY BRYANT AGNEW IV |
| ATTORNEYS FOR APPELLEES: | MATTHEW THOMPSON ROBERT FARLEY WILKINS CHAD KENNETH KING |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED, RENDERED, VACATED, AND REMANDED - 12/17/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**J. WILSON, P.J., FOR THE COURT:**

¶1.     This is a dispute between a law firm and a departing lawyer about the lawyer's rights to contact and continue to represent the firm's clients, as well as the attorneys' fees and expenses related to those clients' cases. More specifically, though, this appeal involves the firm's efforts to compel the departing lawyer to arbitrate the dispute.

¶2.     For purposes of this case, "the firm" is actually two separate entities: Morgan & Morgan P.A., a Florida corporation (hereinafter, "P.A."), and Morgan & Morgan PLLC, a

Mississippi professional limited liability company (hereinafter, "PLLC"). P.A. and PLLC filed an action in Hinds County Chancery Court to enforce the arbitration provision of the employment agreement (the "Attorney Retention Agreement") between P.A. and the departing lawyer, Wes Fulgham. The chancery court ruled that the arbitration provision was valid and enforceable and that the parties' dispute was within the scope of the provision. Accordingly, the court entered an order requiring the parties' to arbitrate their disputes over clients, fees, and expenses. Fulgham appealed.

¶3.     For the reasons that follow, we reverse and render the order compelling arbitration and remand the case for further proceedings. We hold that P.A. is barred from maintaining this action because it never obtained a certificate of authority to transact business in Mississippi. *See* Miss. Code Ann. § 79-4-15.02(a) (Rev. 2013). We also hold that PLLC cannot enforce the Attorney Retention Agreement's arbitration provision because it is not a party to the Agreement and failed to show that it is a third-party beneficiary of the Agreement. Finally, we vacate the chancery court's order sealing the entire case. On remand, the court may determine what, if any, specific parts of the record should be redacted or sealed.

## FACTS AND PROCEDURAL HISTORY

¶4.     Fulgham was employed as an attorney with Morgan & Morgan from 2013 until he left the firm on May 10, 2017. When he left Morgan & Morgan, Fulgham established Fulgham Law Firm PLLC, and he contacted certain clients that he had previously represented at Morgan & Morgan and offered to continue to represent them at his new firm. At least some of those clients chose to follow Fulgham to his new firm.

2

¶5. On May 11, 2017, P.A. and PLLC filed a complaint in Hinds County Chancery Court for a temporary restraining order (TRO) and other relief. As stated in the introduction, P.A. is a Florida corporation, while PLLC is a Mississippi professional limited liability company. P.A. and PLLC alleged in their complaint that Fulgham had solicited Morgan & Morgan's clients in violation of his July 30, 2015 employment contract with P.A. (the "Attorney Retention Agreement"). P.A. and PLLC also alleged that Fulgham had "agreed to binding Arbitration" pursuant to that Agreement, and they sought an order "requiring Specific Performance . . . and that this matter be Ordered to Arbitration."

¶6. The same day that the complaint was filed, following a brief ex parte hearing, the chancery court entered a TRO without notice to Fulgham. The court enjoined Fulgham "from contacting any and all [PLLC/P.A.] current and active clients" and ordered that the arbitration provision of the Attorney Retention Agreement should "be specifically complied with." The court also "sealed" the case and set a hearing for May 22, 2017, on the issues of "injunctive relief and specific performance." By subsequent agreement, the TRO was extended, and the hearing was continued until June 20, 2017.

¶7. At the hearing, Fulgham testified that he worked under an oral contract with PLLC beginning in 2013 and signed a written contract (the "Attorney Retention Agreement") with P.A. in July 2015. Fulgham testified that he worked for and was paid by PLLC pursuant to his original oral contract and that he never actually received any compensation from P.A. pursuant to the Attorney Retention Agreement. In response to Fulgham's testimony, Morgan & Morgan's attorney interjected and argued to the court that there was "no difference"

3

between P.A. and PLLC "as far as Mr. Fulgham is concerned." Counsel further represented to the court, "Just generally speaking, contracts [between] Morgan & Morgan [and its] clients are both with the P.A. and the PLLC. There's no distinction."

¶8. Fulgham went on to testify that attorneys in Morgan & Morgan's Jackson office were required to sign contracts with P.A. in 2015 in response to a threatened legal malpractice lawsuit. Fulgham maintained that his contract with P.A. only applied to "class action work or any other work outside of Mississippi." He claimed that Mississippi clients were all considered clients of PLLC, not P.A. Fulgham testified that although he was employed by PLLC, he was actually paid by Morgan & Morgan Mississippi Management Inc., which is a Florida corporation.[1]

¶9. Fulgham was also cross-examined about a March 4, 2013 contract that he signed with "Morgan & Morgan." That contract did not specify whether "Morgan & Morgan" was P.A. or PLLC, but Fulgham testified that it was a proposed contract with PLLC. Fulgham acknowledged that he signed the document, but he asserted that it was "not a contract." Fulgham's attorney argued that a contract was "never . . . fully executed" because no one ever signed the document on behalf of Morgan & Morgan.[2] The document was admitted into evidence over Fulgham's objection. Notably, the 2013 contract does *not* contain an

---

[1] Other evidence confirms, and P.A./PLLC do not dispute, that Fulgham was actually paid by Morgan & Morgan Mississippi Management Inc.

[2] Fulgham later submitted an affidavit in which he stated that, "[t]o the best of [his] recollection, he signed [the 2013 contract] but did not tender it to Morgan & Morgan." Fulgham's affidavit implies that Morgan & Morgan may have found the document in his office after he left the firm.

arbitration provision.

¶10. Greg Bosseler, the managing partner in Morgan & Morgan's Jackson office, also testified at the hearing. Bosseler testified that there was no "difference" or "distinction" between P.A. and PLLC "in this context" or for purposes of this case. Bosseler stated the P.A. was "the parent corporate entity" and that PLLC operates "here in Mississippi," but he did not elaborate or provide any concrete explanation or documentation of the relationship between the two entities. Bosseler further testified that Morgan & Morgan's Jackson attorneys were compensated pursuant to their agreements with P.A. The firm's Jackson attorneys also signed pleadings identifying P.A. as their firm. Bosseler also testified that at least one of the clients at issue in this case had a signed attorney-client agreement with P.A. In fact, Bosseler estimated that Fulgham had handled "well over fifty" Mississippi cases in which the client had contracted with P.A., not PLLC. Bosseler disputed Fulgham's claim that his contract with P.A. applied only to "class action" and other non-Mississippi work.[3] Bosseler concluded his testimony on direct examination by confirming that P.A./PLLC were asking the court to enter an order compelling arbitration.

¶11. At the conclusion of the hearing, the court gave the parties time to submit additional arguments and authorities in writing. P.A./PLLC submitted proposed findings of fact and conclusions of law in which they argued that P.A. and PLLC were both entitled to enforce the Attorney Retention Agreement's arbitration provision because P.A. was a party to the

---

[3] Bosseler testified that employees were asked to sign new contracts in 2015 specifically because "[t]here was a firm-wide discussion to get contracts that included an arbitration provision." As noted above, Fulgham's (disputed) 2013 contract did not contain an arbitration provision.

5

Agreement, and PLLC was a "third-party beneficiary." In response, Fulgham denied that PLLC was a third-party beneficiary. Fulgham also argued that the Attorney Retention Agreement and its arbitration provision did not apply to the dispute because the clients at issue were all clients of PLLC. Fulgham also alleged that certain provisions of the Attorney Retention Agreement (all related to communications with clients, sharing of attorneys' fees, and responsibility for case expenses) were inconsistent with the Mississippi Rules of Professional Conduct; however, Fulgham did not expressly argue that the arbitration provision was unenforceable for that reason. In their rebuttal, P.A./PLLC argued that Fulgham had signed numerous pleadings and other documents in Mississippi cases as an employee of P.A., and they again asked the court to "immediately order the entirety of this employment dispute to arbitration."

¶12. Fulgham also filed a separate "Motion to Dismiss Morgan & Morgan, P.A. for Want of Jurisdiction." Fulgham argued that P.A. could not maintain the action against him because it had failed to obtain a certificate of authority to do business in Mississippi as a foreign corporation. *See* Miss. Code Ann. § 79-4-15.02(a). In response, P.A./PLLC argued (1) that Fulgham's argument was "judicially estopped" because Fulgham previously conceded that the chancery court had jurisdiction, (2) that P.A. was not doing business in Mississippi, and (3) that PLLC could maintain the action regardless.

¶13. Finally, Fulgham also filed a motion asking the chancery court to unseal the case. He argued that the order sealing the case was unwarranted and that courts and court records should be open to the public.

6

¶14. On November 16, 2017, the chancery court entered an order granting P.A./PLLC's request to compel arbitration. The court's order stated in part:

> [Fulgham] assert[s] that the Attorney Retention Agreement is invalid. This Court disagrees. It is evident to the Court that there is a valid arbitration agreement and that the parties' dispute is within the scope of the arbitration agreement. *See Gulf Ins. Co. v. Neel-Schaeffer, Inc.*, [904 So. 2d 1036] (Miss. 2004). Accordingly, this Court finds that **all disputes**, specifically including reimbursement of client costs and division of attorney's fees[,] should be resolved through binding arbitration as provided in the Agreement.
>
> For the foregoing reasons, the Court finds that the arbitration agreement signed by [Fulgham] and [P.A.] is valid and enforceable. There is no proof before the Court that the arbitration agreement is unconscionable or that [P.A. and PLLC] waived their rights to arbitration. Therefore, the request to compel arbitration is granted. . . . The parties are hereby directed to submit all claims in this matter to binding arbitration in accordance with the signed Attorney Retention Agreement.

Fulgham filed a notice of appeal.[4]

**ANALYSIS**

¶15. "The grant or denial of a motion to compel arbitration is reviewed de novo." *East Ford Inc. v. Taylor*, 826 So. 2d 709, 713 (¶9) (Miss. 2002); *accord Miss. State Port Auth. at Gulfport v. S. Indus. Contractors LLC*, 271 So. 3d 742, 747 (¶11) (Miss. Ct. App. 2018).

¶16. On appeal, Fulgham makes four general arguments, which can be summarized as follows: (1) P.A. cannot maintain this action because it failed to obtain a certificate of authority to do business in Mississippi; (2) PLLC is not a third-party beneficiary of the Attorney Retention Agreement and therefore cannot enforce the arbitration provision; (3) the

---

[4] An order compelling arbitration is appealable as of right. *Sawyers v. Herrin-Gear Chevrolet Co.*, 26 So. 3d 1026, 1034 (¶19) (Miss. 2010). A panel of the Supreme Court subsequently entered an order staying the chancery court's order compelling arbitration pending the decision in this appeal.

7

Agreement and its arbitration provision do not apply to Fulgham's Mississippi cases or the present dispute; and (4) certain provisions of the Agreement (other than the arbitration provision) are void because they violate the Mississippi Rules of Professional Conduct. We agree with Fulgham's first two points and hold that P.A. cannot maintain this action and that PLLC is not a third-party beneficiary and has no right to enforce the arbitration provision. On those two grounds, we reverse and render the order compelling arbitration. Accordingly, we need not address Fulgham's third and fourth arguments on appeal.[5] We do address the chancery court's order sealing the entire case in Part III, *infra*.

### I.    P.A. cannot maintain this action because it failed to obtain a certificate of authority to transact business in Mississippi.

¶17.   "A foreign corporation may not transact business in this state until it obtains a certificate of authority from the Secretary of State." Miss. Code Ann. § 79-4-15.01(a) (Rev. 2013).  A foreign corporation that fails to comply with this law is liable for civil penalties and will be denied access to Mississippi courts.  *Id.* § 79-4-15.02(a), (d).  Pursuant to Mississippi Code subsection 79-4-15.02(a), sometimes called the corporate "door closing" statute, "[a] foreign corporation transacting business in this state without a certificate of authority may not maintain a proceeding in any court in this state until it obtains a certificate of authority."  *Id.* § 79-4-15.02(a).  Here, it is undisputed that P.A. is a foreign corporation (a Florida corporation) and that it has never obtained a certificate of authority to do business in Mississippi.  Thus, the only dispute is whether P.A. was "transacting business" in

_____

[5] Indeed, Fulgham's fourth argument concerns the merits of the underlying dispute. Therefore, it is beyond the scope of the appealable order compelling arbitration.

Mississippi within the meaning of the statute.[6]

¶18.    We conclude that P.A. was transacting business in Mississippi. As discussed above, Bosseler testified that P.A. routinely signed up clients in Mississippi, filed lawsuits and pleadings in Mississippi courts, and entered into employment contracts with Mississippi lawyers. While Morgan & Morgan may now prefer to conduct its Mississippi business through PLLC, the testimony shows that P.A. was also actively doing business in the State. Indeed, we note an inherent inconsistency in P.A.'s position, on one hand, that *its* Attorney Retention Agreement governs the parties' disputes—which all involve Mississippi clients and Mississippi litigation matters—and its position, on the other hand, that it does not even "transact business" in this State. We hold that P.A. was transacting business in Mississippi within the meaning of the statute. *See Trane Co. v. Taylor*, 295 So. 2d 746, 749-50 (Miss. 1974) (holding that a foreign corporation was transacting business in Mississippi where it marketed and sold products through "local franchise agents" who were "for all practical purposes" agents of the corporation).[7] Therefore, P.A. is barred from maintaining this action

---

[6] P.A. also argues that Fulgham is judicially estopped from raising this issue because an agreed continuance order in the chancery court stated in part that the chancery court had "jurisdiction of the parties and the subject matter." We disagree. Fulgham timely raised the statute, which "is in the nature of an affirmative defense." *Bailey v. Ga. Cotton Goods Co.*, 543 So. 2d 180, 182 (Miss. 1989). We see no inconsistency in Fulgham's acknowledgment of the chancery court's jurisdiction followed by a motion to dismiss based on the statutory affirmative defense.

[7] P.A. argues that it can pursue this action because merely "[m]aintaining, defending or settling any proceeding" in Mississippi does "not constitute transacting business" in the State. Miss. Code Ann. § 79-4-15.01(b)(1). We agree with P.A. that it was not transacting business in the State by virtue of its having filed *this lawsuit*. However, P.A. was required to obtain a certificate of authority because it was transacting business in the State before it ever filed this lawsuit.

"until it obtains a certificate of authority." Miss. Code Ann. § 79-4-15.02(a).[8]

> **II.      PLLC cannot compel arbitration because it is not a third-party beneficiary of the Attorney Retention Agreement.**

¶19.     PLLC is not a party to the Attorney Retention Agreement between Fulgham and P.A. That Agreement makes clear that Fulgham and P.A. are the only parties to it. Thus, Fulgham has never expressly agreed to arbitrate any dispute with PLLC.[9] Ordinarily, this would preclude PLLC from compelling Fulgham to arbitrate, for "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds Inc.*, 537 U.S. 79, 83 (2002) (quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)).

¶20.     However, PLLC asserts that it can enforce the Attorney Retention Agreement and its arbitration provision as a "third-party beneficiary." Our Supreme Court has explained what a party must show to establish that it is a third-party beneficiary of a contract:

> In order for the third person beneficiary to have a cause of action, *the contracts* between the original parties must have been *entered for his benefit*, or at least *such benefit must be the direct result of the performance within the*

---

[8] Under a prior version of the corporate "door closing" statute, a foreign corporation that failed to qualify to do business in the State was forever barred from maintaining a suit in our courts based on a claim that accrued prior to its qualification to do business. *MISS CAL 204 Ltd. v. Upchurch*, 465 So. 2d 326, 328-29 (Miss. 1985). However, the statute was amended in 1988 to provide that the bar applies only until the foreign corporation obtains a certificate of authority. *Bailey*, 543 So. 2d at 182 n.1. In addition, a court may stay a proceeding until a foreign corporation obtains a certificate of authority. Miss. Code Ann. § 79-4-15.02(c). However, P.A. has never obtained a certificate of authority or requested a stay for that purpose.

[9] As discussed above, PLLC may have been a party to a 2013 contract with Fulgham, though Fulgham disputes that the contract was properly executed. Regardless, the 2013 contract did not contain an arbitration provision.

10

*contemplation of the parties as shown by its terms*. There must have been a legal obligation or duty on the part of the promisee to such third person beneficiary. The obligation must have been a legal duty which connects the beneficiary with the contract. In other words, the *right of the third party beneficiary* to maintain an action on the contract *must spring from the terms of the contract itself*.

*Adams v. Greenpoint Credit LLC*, 943 So. 2d 703, 708-09 (¶15) (Miss. 2006) (quoting *Burns v. Washington Sav.*, 251 Miss. 789, 796, 171 So. 2d 322, 325 (1965)).

¶21.    In this case, PLLC is not mentioned anywhere in "the terms of the contract itself." PLLC has vaguely claimed that P.A. is its "parent," but it has provided no concrete explanation or documentation of the relationship between the two entities. More important, a party is not a third-party beneficiary just because it has some corporate relationship to one of the parties to the contract.[10] "The cardinal rule of corporate law is that a corporation possesses a legal existence separate and apart from that of its . . . shareholders. This rule applies whether such shareholders are individuals or corporations." *Buchanan v. Ameristar Casino Vicksburg Inc.*, 957 So. 2d 969, 977 (¶27) (Miss. 2007) (brackets, quotation marks, and citations omitted). We do not treat two corporate entities as one simply because one is a wholly-owned subsidiary with common management. *Id.* at 978 (¶¶28, 30). There is no reason for us to abandon this basic rule of corporate law in the context of one entity trying to take advantage of a relative's agreement to arbitrate.

_____

[10] *Basic Capital Mgmt. Inc. v. Dynex Commercial Inc.*, 348 S.W.3d 894, 900 (Tex. 2011) ("[A]s a general proposition, a corporate parent is not a third-party beneficiary of its subsidiary's contract merely by virtue of their relationship."); *accord, e.g.*, *Russell v. Birmingham Oxygen Serv. Inc.*, 408 So. 2d 90, 92-93 (Ala. 1981); *InterGen N.V. v. Grina*, 344 F.3d 134, 147 (1st Cir. 2003); *Tennessee Valley Auth. v. Exxon Nuclear Co.*, 753 F.2d 493, 497-98 (6th Cir. 1985); *Dow Corning Corp. v. Chem. Design Inc.*, 3 F. Supp. 2d 361, 366 (W.D. N.Y. 1998).

11

¶22. Finally, the singular fact that PLLC formerly employed Fulgham[11] does not give it the right to enforce contracts between Fulgham and other parties. As stated above, our Supreme Court has made clear that third-party beneficiary status "*must spring from the terms of the contract itself*"—i.e., it must be "*shown by* [*the contract's*] *terms*." *Adams*, 943 So. 2d at 709 (¶15). The terms of the Attorney Retention Agreement between Fulgham and P.A. simply do not mention PLLC. All we have is PLLC's vague claim that P.A. is its "parent." On this record, PLLC's claim that it is a third-party beneficiary must fail. Accordingly, we hold that PLLC failed to establish that it has any right to compel Fulgham into arbitration.

### III.     The chancery court abused its discretion by sealing the entire case.

¶23. As noted above, following the initial ex parte hearing, the chancery court granted P.A./PLLC's request to seal the entire case. P.A./PLLC stated in their written motion to seal the file that the case "concern[ed] confidential client information and communications, bound by attorney client privilege." P.A./PLLC did not elaborate or provide any specific support for this claim in their motion or at the ex parte hearing. Nonetheless, the chancery court's TRO provided "that this matter shall be sealed." Fulgham later moved to lift the seal, but the chancery court did not address his motion. On appeal, Fulgham again moved to lift the seal, but a panel of the Supreme Court denied his motion, stating only that Fulgham's motion was "not well taken and denied."[12]

---

[11] As discussed above, it appears that Fulgham was employed by PLLC, but he was paid by yet another entity—Morgan & Morgan Mississippi Management Inc., a Florida corporation.

[12] Mississippi Rule of Appellate Procedure 48A(a) generally provides that "[a]ny case filed with the clerk of the Supreme Court and Court of Appeals which was previously closed

¶24. Our Constitution mandates that "[a]ll courts shall be open," Miss. Const. art. 3, § 24, and "Mississippi law favors public access to public records." *Estate of Cole v. Ferrell*, 163 So. 3d 921, 925 (¶18) (Miss. 2012). "Court filings are considered to be public records, unless otherwise exempted by statute." *Id.* at (¶15). In addition, a court may, within its discretion, determine that court filings or information contained therein "should be declared confidential or privileged" and sealed from public disclosure. *Id.* at (¶16). However, before sealing an entire case, a trial court should first "conduct the balancing test set out in *Estate of Cole*," *supra*. *Smith v. Doe*, 268 So. 3d 457, 464 (¶27) (Miss. 2018); *accord Butler Snow LLP v. Estate of Mayfield*, 281 So. 3d 1214, 1220 (¶¶27-29) (Miss. Ct. App. 2019). That test balances the claimed private interest in confidentiality against the public interest in open courts. *Estate of Cole*, 163 So. 3d at 924, 929 (¶¶11, 32-33).

¶25. In this case, the chancery court did not conduct any balancing test or any analysis of P.A./PLLC's request to seal the entire case. The order sealing the case was simply entered following an ex parte hearing. Yet it is not clear that the court file in this case contains any privileged attorney-client communications or confidential client information. To the extent that it does, specific documents can be redacted or filed under seal as necessary. But the fact that a few specific filings may contain privileged or confidential information does not warrant sealing the entire case from public view.

¶26. In addition, although the Attorney Retention Agreement between Fulgham and P.A.

---

to the public by action of the trial court . . . shall be closed to public access in the appellate courts and shall be treated as a confidential case by the clerk of the appellate courts."

13

contains a one-sided confidentiality provision,[13] that provision does not warrant sealing the entire the Agreement or the entire case. In this case, P.A. chose to make the Agreement a public judicial record by filing it in court and asking the court to interpret and enforce its terms. Once P.A. invoked the judicial process to enforce the Agreement, it was no longer entitled to insist that the Agreement remain confidential. *See Estate of Cole*, 163 So. 3d at 928 (¶28) (discussing *Bank of Am. v. Hotel Rittenhouse Assocs.*, 800 F. 2d 339 (3d Cir. 1986)). Rather, the Agreement became a public record in a judicial proceeding, presumptively open to the public. *Bank of Am.*, 800 F.2d at 345. It is conceivable that specific terms of the Agreement are sufficiently confidential and sensitive that parts of the Agreement could be redacted.[14] But the chancery court's order sealing the entire case did not address that issue.

¶27.    In summary, while a court has discretion to seal or require the redaction of court filings that contain confidential or privileged information, *Estate of Cole*, 163 So. 3d at 925 (¶16), the court must first balance the asserted private interest in confidentiality against the public interest in open courts and transparent judicial proceedings. *Id.* at 924, 929 (¶¶11, 32-33). The chancery court in this case failed to do so and abused its discretion by sealing the entire case file. Therefore, we vacate the chancery court's order sealing the entire case. On remand, the chancery court may determine what, if any, part of the record should be sealed

---

[13] The Agreement prohibits Fulgham, but not P.A., from disclosing the contents of the Agreement.

[14] On appeal, Morgan & Morgan has asserted that the Agreement contains "trade secrets."

14

or redacted under the Supreme Court's decision in *Estate of Cole*.

**CONCLUSION**

¶28. The chancery court's order compelling arbitration is reversed and rendered. In addition, P.A. should be dismissed from the case because it has failed to obtain a certificate of authority to transact business in Mississippi. Finally, we vacate the chancery court's prior order sealing the entire case. On remand, the court may consider what, if any, specific parts of the record should be sealed or redacted. The case is remanded to the chancery court for further proceedings consistent with this opinion.

¶29. **REVERSED, RENDERED, VACATED, AND REMANDED.**

**WESTBROOKS, TINDELL AND McDONALD, JJ., CONCUR. GREENLEE, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. LAWRENCE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., AND GREENLEE, J. CARLTON, P.J., McCARTY AND C. WILSON, JJ., NOT PARTICIPATING.**

**LAWRENCE, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶30. I concur with the majority's holding that Mississippi Code Annotated section 79-4-15.02 (Rev. 2013) prevents Morgan & Morgan P.A., a Florida legal entity (hereinafter referred to as "P.A."), from bringing a suit against Fulgham because it is doing business in Mississippi without a certificate of authority. I also concur with the majority's holding that the chancellor should have conducted the required balancing test set out in *Estate of Cole v. Ferrell*, 163 So. 3d 921 (Miss. 2012), before sealing the record in this case. However, I respectfully disagree with the majority's decision to render judgment on all issues presented to this Court on appeal. I would find the chancellor committed reversible error in failing to

15

conduct the two-pronged, three-question inquiry set out in *East Ford Inc. v. Taylor*, 826 So. 2d 709, 713 (¶¶9-10) (Miss. 2002), concerning the enforcement of the arbitration clause. Further, I respectfully disagree with the majority's opinion rendering the legal issue of whether Morgan & Morgan PLLC, a Mississippi legal entity (hereinafter referred to as "PLLC"), can enforce the arbitration agreement as a third-party beneficiary. The chancellor never addressed that issue or made findings of fact on that issue, and there is no evidence within his opinion that he applied the correct legal standard on that issue. As a result, instead of rendering this case as the majority does, I would remand this case and direct the chancellor to conduct the two-pronged, three-question inquiry in *East Ford* and also consider whether PLLC may enforce the contract for and on behalf of P.A. as a third-party beneficiary, if necessary.

¶31. It is important to note that the June 20, 2017 hearing was for the purpose of determining the permanency of the restraining order. At the beginning of the hearing, the chancellor stated, "We're here in the interest of the case of Morgan and Morgan, PLLC vs. William 'Wes' Fulgham on an emergency complaint for a TRO. Is that correct?" Morgan & Morgan's attorney responded in the affirmative. During the hearing, the testimony centered on the arbitration clause and then the alleged need for the extension of the TRO. At the close of the hearing, the chancellor requested the parties submit written briefs as to why the Fulgham/P.A. contract should be enforced. PLLC and P.A. filed a Mississippi Rule of Civil Procedure Rule 52 proposed findings of fact and conclusions of law. Fulgham filed a response. On July 13, 2017, PLLC and P.A. filed a petition for contempt against Fulgham

16

for handling three client's cases that were subject to the TRO.

¶32. On August 10, 2017, Fulgham filed a motion to dismiss P.A. for want of jurisdiction, claiming that neither PLLC nor P.A. could enforce the contract due to section 79-4-15.02. PLLC and P.A. responded, arguing that section 79-4-15.02 did not apply and that, regardless, PLLC could enforce the Fulgham/P.A. contract as a third-party beneficiary.

¶33. On November 3, 2017, Fulgham filed a motion for temporary relief pending final ruling and a motion to lift the seal. The court never ruled on his motions. At oral argument before this Court, both parties stated that a second hearing was scheduled for November 30, 2017, for the purpose of the contempt complaint and the motion to dismiss. Both parties arrived at the hearing on that date but discovered that, on November 16, 2017, the chancellor had issued an order finding the arbitration agreement valid and enforceable.[15] On November 16, 2017, the chancellor made a ruling on the validity of the arbitration clause.

### 1. Arbitration

¶34. At the June 20, 2017 TRO hearing, Bosseler testified that "[t]he 2015 contract referencing Morgan & Morgan, P.A. is **identical** to the 2013 contract, and, again, is our parent corporate entity. . . ." (Emphasis added). I disagree. The 2015 contract is notably different than the 2013 contract. The 2013 contract had no arbitration clause, while the 2015 contract contained an arbitration clause mandating employees waive their constitutional

---

[15] Because the case was sealed, the order was not entered in the Mississippi Electronic Courts' database. The chancery court clerk did not send a separate notice notifying the parties of the order.

17

rights to a jury trial. If the employees did not sign the contract, they were "free to leave."[16]

¶35. Article 3, Section 24 of the Mississippi Constitution of 1890 provides that for every injury there shall be a remedy:

> All **courts shall be open**; and **every person** for an injury done him in his lands, goods, person, or reputation, **shall have remedy by due course of law**, and right and justice shall be administered without sale, denial, or delay.
>
> . . . .
>
> [Further,] Article 3, Section 31 provides:
>
> The **right of trial by jury shall remain inviolate**, but the legislature may, by enactment, provide that in all civil suits tried in the circuit and chancery court, nine or more jurors may agree on the verdict and return it as the verdict of the jury.

*East Ford Inc.*, 826 So. 2d at 718 (¶28) (McRae, J., dissenting) (emphasis added).

¶36. Arbitration rose to popularity in the early twentieth century. The United States Congress passed the Federal Arbitration Act (FAA) and advocated arbitration as an efficient and timely mechanism for the resolution of disputes. 9 U.S.C. § 2 (2018). The Mississippi Supreme Court recognized and adopted this national preference for arbitration in *Cox v. Howard, Weil, Labouisse, Friedrichs Inc.*, 619 So. 2d 908, 914 (Miss. 1993); *see also East Ford Inc.*, 826 So. 2d at 713 (¶9).

¶37. "In reviewing an appeal of an order compelling arbitration, we review the trial judge's factual findings under an abuse-of-discretion standard." *Smith v. Express Check Advance*

---

[16] During oral argument, appellees' counsel stated that the sole purpose of the 2015 contract was to add the arbitration clause. When asked what would happen if employees did not want to waive their constitutional rights to a jury trial, he responded that they were "free to leave."

18

*of Miss. LLC*, 153 So. 3d 601, 605 (¶8) (Miss. 2014). "This Court will not disturb a chancellor's findings of fact unless the chancellor was manifestly wrong [or] clearly erroneous, or applied the wrong legal standard." *McNeil v. Hester*, 753 So. 2d 1057, 1075 (¶66) (Miss. 2000).

¶38. The Mississippi Supreme Court requires that a two-pronged, three-question inquiry be used in determining whether an arbitration clause is enforceable under the FAA. *East Ford Inc.*, 826 So. 2d at 713 (¶¶9-10); *Gulf Ins. Co. v. Neel-Schaffer Inc.*, 904 So. 2d 1036, 1042 (¶16) (Miss. 2004). "The first prong has two considerations: (1) whether there is a valid arbitration agreement and (2) whether the parties' dispute is within the scope of the arbitration agreement." *East Ford Inc.*, 826 So. 2d at 713 (¶9). The second prong requires the court to examine "whether legal constraints external to the parties' agreement foreclosed arbitration of those claims." *Id*. at (¶10) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614, 626 (1985)).

¶39. It goes without argument that before a court summarily enforces an arbitration agreement compelling the waiver of constitutional rights, an analysis under the supreme court's two-pronged, three-question inquiry should be performed. That two-pronged, three-question test was designed to ensure that arbitration agreements are indeed valid and to prevent overreaching contracts and the potential improper denial of constitutional rights. While promotion of efficiency within the court system is laudable and desirable, so too are constitutional rights. Trial courts play a very important role in balancing those interests of efficiency and valid arbitration agreements. After hearing all of the evidence as to the

19

validity of the arbitration agreement, applying the two-pronged, three-question test is essential to protecting not only the intent of the FAA but, and more importantly, the rights of the citizens in this state.

¶40. In this case, the chancellor failed to consider both prongs of the two-pronged test set out in *East Ford*. The majority claims the chancellor applied the entire test. I disagree. The chancellor did apply the first prong, which consisted of two questions, and his order states as much. But the chancellor failed to fully consider the second prong, as argued by the parties. Fulgham claimed that certain terms of the contract were void because they conflicted with the Mississippi Rules of Professional Conduct. As stated previously, the second prong demands the following question be answer: "whether **legal constraints** external to the parties' agreement foreclosed arbitration of those claims." *Id*. (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 626) (emphasis added). "Under the second prong, applicable contract defenses available under state contract law such as fraud, duress, and unconscionability may be asserted to invalidate the arbitration agreement without offending the Federal Arbitration Act." *Id*. (citing *Doctor's Assocs. Inc. v. Casarotto*, 517 U.S. 681, 686 (1996).

¶41. In his order, the chancellor stated, "It is evident to the Court that there is a valid arbitration agreement and that the parties' dispute is within the scope of the arbitration agreement." That answered the first prong of the test. Regarding the second prong, the chancellor merely found that "[T]here is no proof before the Court that the arbitration agreement is unconscionable." Unconscionability is but one of the potential legal constraints that could be used to invalidate an arbitration agreement. In this case, Fulgham alleged the

Mississippi Rules of Professional Conduct were the legal constraint that caused the arbitration agreement to be invalid.[17] The chancellor never addressed that issue, meaning that he did not fully apply the second prong required by the supreme court. I would find that, since the chancellor failed to address Fulgham's claim in any form or fashion and in not applying both prongs of the test, he failed to apply the correct standard set out by the Mississippi Supreme Court. Accordingly, I would remand the question of the arbitration clause's enforceability to the chancellor for a full application of the test set forth by our supreme court.

### 2. Third-party beneficiary

¶42. P.A. claimed that, in the event it could not enforce the arbitration clause, PLLC could as a third-party beneficiary. Generally, "in order to maintain an action to enforce the breach of a contract, . . . it is ordinarily a necessary prerequisite that the relationship of privity of contract exist between the party damaged and the party sought to be held liable for the breach of the contract." *Burns v. Washington Sav.*, 251 Miss. 789, 794, 171 So. 2d 322, 324 (1965). However, there are legal situations where a third-party beneficiary can enforce the terms of a contract between other parties. The *Burns* case explains the requirements for a third-party beneficiary to have a cause of action:

> [t]he contracts between the original parties must have been entered into for his benefit, or at least such benefit must be the direct result of the performance within the contemplation of the parties as shown by its terms. There must have been a legal obligation or duty on the part of the promisee to such third person

---

[17] Both parties to the contract of employment are lawyers. The Mississippi Rules of Professional Conduct certainly apply to lawyers practicing law in the State of Mississippi.

beneficiary. This obligation must have been a legal duty which connects the beneficiary with the contract. In other words, the right of the third party beneficiary to maintain an action on the contract must spring from the terms of the contract itself.

*Id*. at 789, 171 So. 2d at 325.

¶43. PLLC claims that it is entitled to enforce the Fulgham/P.A. contract as a third-party beneficiary because its rights "spring from the term of the contract itself." The chancellor did not address this argument and made no findings of fact or legal conclusions as to the application or legal effect of this argument. I would find that, on remand, if the chancery court finds the arbitration clause is indeed valid, as it relates to the parties (PLLC was a party to this action) the chancellor should then address whether PLLC may enforce the arbitration clause as a third-party beneficiary. "The role of an appellate court is not to be a fact finder but rather determine and apply the law to the facts determined by the trier of fact." *Southern v. Miss. State Hosp.*, 853 So. 2d 1212, 1214 (¶4) (Miss. 2003). Because the chancellor did not address this issue, made no findings of fact on this issue, and never articulated a legal conclusion based on the correct legal standard, I would find that this issue should be remanded instead of rendered.

**CONCLUSION**

¶44. Instead of reversing and remanding because of the trial court's failure to articulate its ruling and failure to allow the parties the opportunity for further discovery and potential testimony on the legal issues, the majority makes the ruling for the chancellor and renders

22

the case.[18]  I would reverse and remand this case to require the chancellor to address the validity of the arbitration clause by applying the full scope of the second prong as argued by the parties and, if necessary, to further find facts and address the legal issues concerning the third-party-beneficiary argument.  Accordingly, I respectfully dissent as to the rendering of this case.

**BARNES, C.J., AND GREENLEE, J., JOIN THIS OPINION.**

---

[18] The only testimony in this case occurred during the TRO hearing, and it is not clear what, if any, discovery occurred or needed to occur as to the issues raised by the parties.